*148 OPINION of the Court, by
Judge Owsley.
Tina is a contest for land, between adversary titles. Théap-Pe^ant> who was defendant in the court below, holds the eldest entry and patent : we will therefore first inquire into the validity of his claim.
■ J,_,hn Vance, under whom he claims, obtained from the court of commissioners, the 14th of J anuary 1780, the following certificate, viz. “ John Vance, by Oavid Yance, this day claims a pre-emption of 1000 acres of at, See. lying on a fork of the east branch of Licking creek, called Mill creek, to include his improve-metlti by marking and improving the same in 1776, by building a cabin,” &c. And on the first day of June 1780, made the following entry with the surveyor: fohn Vance entert a pre-emption warrant of 1000 ^cres, on a fork of the east branch of Licking creek, called Mill creek.”
That both the certificate and entry are defective in precise description, we have no doubt. Mill creek is admitted to be about six miles long, with various improvements thereon ; but on what part of the creek Vance’s improvement could be found, or when found how distinguishable from other improvements on the neither the certificate nor entry has shewn. Ualess, therefore, Vance’s improvement had acquired the requisite notoriety at the date of his entry, to supply tbis defect in description, his entry must fail : and that the evidence does not prove such a notoriety, we think *149 evident: for although it is proven that if a subsequent locator had happened to.have fallen in with one of the company who assisted in making Vance’s improvement,' he might have acquired information where it could be found, yet it is not proven to have obtained that degree of notoriety by which a subsequent locator, by the exercise of reasonable diligence, might have certainly found it.
That it was known to one company ofim-provers,not fuf-ficient evidc-ice of no'oriefv — « Accord' man vs Melton, voi 2 155 6 Harrison's heirs •vs Dertmiab, 349*
TRe appellant then can have no advantage from the elder date of his entry, but,must rely for success on his elder patent. We will therefore inquire into the validity of the appellee’s claim. He derives title under the following entry :
“ June 16, 1780 — Col. Thomas Marshall enters 1050 acres, upon a treasury warrant, to begin at the end of two miles and a half east of William May’s spring, where the said May’s settlement and pre-emption is lo cated, then to run N. 22 1-2 east, 1280 poles, and to extend from each end of said line eastwardlv for quantity ; tying on the waters of the north fork of Licking creek, on the south side thereof.”
In the progress of this cause in the court below, it was admitted by the parties that the just arid legal construe-tion of the appellee’s entry is to begin two and a half miles east from May’s lick, and then run as called for in the entry ; and it is now urged for the appellant tha# this admission should not bind him, because it ¡3 contended it is an admission of law contrary to the just construction of the entry.
It is proven that a large buffalo road, leading from. Limestone to the Blue licks and usually travelled by passengers, passed May’s lick qt the date of this entry ; and that the lick was then generally known by those conversant in that part-of the country.
To justify the construction given to the entry by the parties in their agreement, May’s lick and May’s spring alluded to in the entry must be one and the same place. Of this the parties appear not to have been ignorant previous to making the admission: for whether the lick and spring is the same place, was a fact then in contest, to which evidence had been taken. The admission, therefore, was not a conclusion of law only, contrary'to .the just construction of the entry, but contains an admission of the fact of identity in the spring and *150 lick, and the regular conclusion, of law applicable to tha$ fact.
•i Tbewordsc>f conftrued »ccor. ding to their u. fuai andordina. Accord. fíiVers Graham, voi. a, ?4S*
Entry catling to begin two s a half miles E. fec.^the Sbéginl ning is to be af-certamed by the magnetic meridian, and the furveyexecuted according to the magnetic meridian at thc'dace of the entry.
The court cannot judicially take notice that any variation of the mag. netic meridian has occurred be. tween the date of the entry and the date of :he (urvey — theva. riation between given periods,id a ¡aft to be proved.
*150 The parties by their admission having agreed the appellee’s entry should begin two and a half miles east of the lick, and the identity and notoriety of the lick having been abundantly proven, the question occurs, should the beginning be at the end of two and a half miles from the lick, according to the true, or magnetic meridian ? *
The words of the entry should be construed accord. • tQ usual and ordinary acceptation ; and it is believed that call;-, m entries for given courses, were usually and generally understood to be according to the magnetic median. This, we apprehend, is evident from the general, it not universal custom which has prevailed in this country among surveyors in executing surveys according to the magnetic meridian. Besides, to have made subsequent locators regard such calls according to the true meridian, would have been requiring more perhaps than could have been attained by most of the locators in the country: for it is believed instruments were not then to be had in the country by which the true meridian could have been correctly ascertained.
We are of opinion, therefore, the beginning of the ap-pellee’s survey should be ascertained according to the fuagnetic* meridian. But it is contended that if the call for course should be construed according to the ftiagnetic meridian, the survey should have been executed agreeable to the magnetic meridian at the date of the entry, and not as it was when the survey was made; and hence u is inferred the court below erred in estab* lishing the appellee’s survey, which was made according to the magnetic meridian, when the survey bears date in 1784. Were it admitted the magnetic meridian was materially different when the survey was made, to what it waá at the making of the entry, the conclusion drawn by the appellant would be inevitably true : for it is clear the survey should be niade according to the magnetic* *151 meridian when the entry was made, and not as it might be at the executing of the survey. But what may be the variation of the compass between any given periods, is a fact this court eannot judicially notice, unless proven. No proof has been made in this case of any variation between the date of the entry and that of the survey, and we cannot judicially say a material variation exists prejudicial to the appellant. We cannot say, therefore, the court below erred in establishing the beginning of the appellee’s survey.
The same answer may be given to the objections raised in argument, as to the variations of the lines of the survey.
The only remaining question for consideration is as to the boundary of the appellee’s survey. It appears to have been made in a rectangular figure ; all the corners and lines are proven to háve been marked when the Survey was executed, except the south boundary or last line, which is proven to have been marked but part of the way only. The last corner of the survey is now missing, and an ancient marked line of 612 poles long* corresponding in course with the south boundary, and agreeing in ancient appearance with the true boundary of the survey, is shewn. Whether, therefore, this line should forra a part of the south boundary of the appel-lee’s survey, is the remaining question ior decision. We have no doubt but that it should. The perfect coincidence in the course between the line called for and the marked line ; its ancient appearance, and the circumstance of the line not having been marked but part the distance, conduce clearly and satisfactorily to establish this marked line as a line of the original survey. We think, therefore, the court erred in disregarding that line asa part of the boundary.
The decree of the court below, therefore, must be re *152 versed, the cause remanded and a decree there -entered making that line, so far as it extends, the south boundary, and a line to be extended from its termination to the beginning the remaining south boundary. And lor so much land as will be included in the appellee’s survey, when thus made, lie has the better right, and the appellant should convey to him by deed of special warranty. The appellee mast pay the appellant his costs in this court, &c.

 Sed quaere — Vide aft of Virginia, Chan. Rev* p. 23^ ch, ia — i LittJ E. L KL, p. 3S9 — Finnie vs Clay, vol. 2, p. 352.
Bj the ilaiu e of Virginia of 177a, it is enaited, that after the firft of January I773'> every furveyor fhall» under the penalty of five pounds, “ return all his or their original or new furveys, and prbtraB and lay do*iort tbeirplats by the true, ani not by the artificial or magnetic meridian” — and moreover esprefa in their retufn of each furvey the true quantity or degree of tfie variation afore^ laid, and whether it be eaft or well.
*151 According to ihe true meridian, theexpreffion Eaft is intelligible to futveyors ánd maihematicians 3 it is always the lame, whether ufed in 1780 or-1813— in January or December 5 but according to the magnetic needle, the courfe Haft is changeable, varying in different years, and piogreffing in its variation irom the men h of January to the month oí December, To afeertain wbat was the precile variation in any given year or month, is now very difficult, if not impoffible ; but it is always practicable to aicertain the variation at the timé being, and to execute a furvey by the true meridian. By making entries relate to the true meridian, all are referred to one uniform standard, and whether ente/ ed and Jurvejed ia the fame year, or in 1779 and in s8l 3, the refult will be the (ame,