Burgin *vs* Chenault, &c.

APPEAL FROM THE MADISON CIRCUIT.

*Evidence. Deeds. Election. Femes Covert.*

JUDGE BRECK delivered the opinion of the Court.

EJECTMENT.

Case. 67.

*January* 31.

Case stated and facts proved.

THIS is an appeal from a judgment in ejectment, rendered in favor of the plaintiff, upon the demise of the appellees against Burgin, the appellant.

The lessors claim the land in contest as embraced in the patent of Calloway, from whom they attempted to deduce title. Calloway appears to have conveyed to Hart, and Hart to Nathaniel Tevis.

Tevis died about 1798, leaving a will, in which he devises a certain portion of his land, embracing, as is contended, the land in dispute to be sold to the highest bidder, and the money to be equally divided between his two daughters, afterwards Mrs. Davis, and Mrs. Wheeler, besides whom it appears he had several other children.

In 1807, Davis and wife and Wheeler and wife, attempted to convey the land thus devised to be sold to Robert Tevis, by deed bearing date the 23d October, 1807. The deed appears to have been acknowledged by Davis and wife in October, 1809, Mrs. Davis relinquishing her right of dower; and in 1810, it was also acknowledged by Wheeler and wife, and recorded. Before this deed was offered in evidence to the jury, it was admitted that Davis and wife, and Wheeler, all died before the institution of this suit, having heirs, who were still living. The Court permitted the deed to go in evidence to the jury, with no evidence of its execution, except the certificate of the Clerk thereon, overruling the defendant's objections, and saying to the jury, that the deed was evidence of the extent to which Robert Tevis claimed, and was also evidence that Wheeler and wife and Davis and wife, had elected to take the land devised to be sold, instead of the proceeds:

and that by such election the title to said land had vest-
ed in them under the will of Tevis.

The plaintiff also read to the jury the will of Robert
Tevis, and also a plat and survey made in 1798, and
the connected plat and report of the surveyor in this
case; and introduced testimony conducing to prove
that the land in contest was embraced in Calloway's
patent, his deed to Hart, and Hart's deed to Tevis, all
which title papers were read to the jury. That it was
also part of the land devised by Tevis to be sold for the
benefit of his two daughters, and embraced in the deed
from Wheeler and wife and Davis and wife to Tevis;
and also by the survey, purporting to be made for N.
Tevis' executors in 1798—and that the defendant was
in possession at the commencement of this suit. There
was also some proof in regard to the possession of Rob-
ert Tevis, and of those claiming under him, of the land
embraced in the deed of Wheeler and wife, &c. It was
also proved that R. Q. Davis and others, lessors, were
the heirs of Mrs. Davis.

The defendant introduced a deed to him from one
Bentley, and testimony conducing to prove that since
1815, the land embraced in the boundaries of the deed
had been in possession of Bentley and himself, claimed
and enclosed by them by fence—and also that the boun-
daries of the deed embraced the land in contest.

Only a few acres of land were involved in the con-
test, which turned, or in part turned upon a mere ques-
tion of boundary.

The jury found for the plaintiff, up to a particular line
upon the connected plat, and which would include a
few acres of land in possession of the defendant.

Numerous questions are presented by the assignment
of errors.

1st, It is contended that the Court erred in permitting
the deed from Davis and wife, and Wheeler and wife to
go to the jury.

The Court was right, we think, in permitting the deed
to go to the jury. We are inclined to the opinion, that
as the deed of the husbands, it might be read under the
10th section of the act of 1831: (*Stat. Law*, 453.) But

Questions pre-
sented for revis-
ion.

A deed forty yr's
old under which
possession had
been held by the
grantee and those

if not embraced by the provisions of that act, we think it was competent to be read upon another ground. The original deed was offered, and was more than forty years old. And although the fact did not appear when the deed was offered, that the grantee had held and claimed under it and been in possession of the land, yet as that fact would unquestionably render it competent, (and we do not decide that it would not have been so without it,) the Court was right in permitting it to be read, in anticipation that it would so appear during the trial—and if it should not, that it might be excluded. The fact that Tevis claimed and held under the deed, subsequently appearing, there was no error in suffering it to go before the jury.

2d, It is contended that the Court erred in regard to the effect to which the jury were told this deed was entitled, not only in the remarks at the time it was read, but afterwards in the instructions upon the subject. Upon the death of Nathaniel Tevis, the title of the land directed by his will to be sold, vested in his heirs at law, and we think, from any thing appearing in this record, is still in them. It is true, if the land had been sold as directed by the will, and conveyed to the purchaser, the title would have vested in him. But it is not shown that it was ever so sold. Although Wheeler and Robert Tevis were named in the will as executors, yet it does not appear that they or either of them ever qualified, or assumed to act in that character. The deed does not evidence a sale by them or either of them as executors. The only interest which Wheeler and Davis had in the land, was at most, an estate during their lives. And as they were both dead before the institution of this suit, the deed was no evidence of title in any of the lessors of the plaintiff derived from them.

As to Mrs. Wheeler and Mrs. Davis, it was neither so acknowledged or recorded as to pass any title from them, or to constitute it for any purpose, evidence against them: *Applegate* vs *Gracy*, (9 *Dana*, 215.) It was no evidence, we think, as decided by the Circuit Judge, of an election by them to take the land instead of the proceeds thereof in money. The doctrine seems

---

*Margin notes:*

BURGIN
*vs*
CAENAULT, &c.

claiming under him competent evidence, tho' not recorded or otherwise proved.

Land devised to be held until sold vest in the heir at law.

A *feme covert* cannot make an election which will be valid unless in relation to the property or thing about which she is to make the election; she has the power to act as a

Burgin
vs
Chenault, &c.

feme sole. Can
the husband act?
Querie.

to be, that a *feme covert*, is not competent to make an election, unless under powers authorizing them to deal with the property as a *feme sole*: (*Powell on Devises*, 21st vol. *Law Library*, 38.) If it were even conceded that the husbands alone could elect, of which we are not satisfied, still their election would not invest them with the title, nor do we apprehend it would invest it exclusively in the *femes*. It would still remain in all the heirs of the testator, in trust for the two daughters.

It is not perceived, therefore, that the deed could be used, or would be evidence in this case for any other legitimate purpose, except while Tevis or those claiming under him, were in possession and claiming under it, to define or limit the extent of the possession. And it follows, that the Court below erred in the instruction to the jury that the deed was evidence of an election by Wheeler and wife, and Davis and wife, to take the land instead of the proceeds, and that by such election the title vested in the *femes* at the date and acknowledgment of the deed.

3d, It is objected that the survey and plat of 1798, was erroneously permitted to be read in evidence. This objection is deemed invalid. The survey purported to be made only a few days after the probate of the will, and at the instance of the executors, and taken in connection with other proof in the case, was evidence of the boundary of the land devised by the testator to be sold for the benefit of his daughters.

Surveys are competent evidence in ejectment to prove extent of possession.

4th, It is insisted that the Court misdirected the jury in the instruction given on the motion of the plaintiff.

We perceive no defect in the instruction, except that it excludes, in effect, from the consideration of the jury, as matter of defence, the evidence of possession by the defendant and his grantor, and in that respect, as the record now stands, we think it is erroneous. As we understand the testimony, it conduced to prove actual possession by enclosure, in the defendant and Bentley, for more than twenty years before the commencement of the plaintiff's action. Such a possession, for aught that appears, would have constituted a valid defence.

Besides, if the jury would even have been authorized to find for the plaintiff upon the facts assumed, it would only have been to the extent that the lessors of the plaintiff had title, which, according to the principles of this opinion, would have been limited to the title in the heirs of Davis, and in the other lessors as heirs of Nathaniel Tevis.

The first and second instructions moved on the part of the defendant, are mainly predicated upon the magnetic variation of the compass. They virtually ask the Court to tell the jury, that in running or ascertaining the disputed line, if marked trees or natural objects were not found, course and distance were to govern, but that proper allowance was to be made by them for the variation of the needle at the time the survey in this case was made, from the true meridian. The Court refused to give the instructions, but said to the jury "that no allowance was to be made for the variation of the needle in said line, that the needle only varied from the true meridian for about thirty years, and then commenced running back, and that it had about time to get to its greatest variation and back to the true meridian since the date of Calloways original survey."

There was no error, we think, in overruling the instructions asked, but we are not satisfied the Court was right in the instruction given.

The only evidence in the record, in regard to the variation of the compass, was that of the witness. Crook, who appears to have been a surveyor, although not the one who made the survey and connected plat in this case. He stated that the variation of the compass since 1785, (the date of Calloway's survey,) from the meridian, would be at least one and three fourth degrees to the east of the true meridian. The question is whether it was practicable for the jury to determine, from this testimony, where the line from the agreed corner, calling to run north, would run, or what allowance was to be made by them for the variation of the needle at the time the survey in this case was made, from the true meridian. We think not. The line which should govern, in view of the variation, could only be ascer-

Burgin
vs
Chenault, &c.

The presumption is, that surveys were made by the magnetic meridian. The variation of the n·e·lle is matter of fact, not of law.

tained by an actual survey upon the ground, and with more testimony than the record contains.

According to the case of *Vance vs Marshall,* (3 *Bibb,* 150,) the original survey of Calloway is to be regarded as made according to the *magnetic* and not the *true* meridian. In ascertaining, therefore, where the line in question should run, the magnetic meridian in 1785, should be ascertained, or which would be the same thing, the magnetic variation at that time from the true meridian; and a line run according to that variation from the agreed corner at A. upon that plat, would be the true line. This is upon the supposition, of course, that the line cannot be ascertained by marked trees or natural objects.

The proposition of the Court appears to be based upon the idea that the original survey of Calloway was made according to the true meridian, and that at that time there was no magnetic variation. Whether upon this hypothesis the needle would have vibrated to its greatest extreme of variation and back again to the true meridian, since the date of the survey, or in about sixty years, is a question, we think, of fact, and not of judicial cognizance. Besides, the material fact upon which the principle is predicated, is not established by any thing appearing in the record. It is not shown that the needle was on the true meridian in 1785. It is true, if it be assumed that the variation is always at a uniform rate, and invariably continues up to a given point and never passes it, that the needle at any point which might be assumed at a certain determinate period, would be at the same point again. But such facts cannot be judicially assumed, nor the determinate period known.

Wherefore, the judgment is reversed, and the cause remanded, that a new trial may be had in conformity with the principles of this opinion.

*Turner* for appellant; *Caperton* for appellees.