[See Case No. 16,016.]

═════

## Case No. 16,016.

### UNITED STATES v. PAYSON.

### SAME v. PIERCE.

[1 Cal. Law J. 325.]

District Court, N. D. California. April 8, 1863.

MEXICAN LAND GRANTS—CONSTRUCTION OF DEEDS —REFORMATION.

1. If the description in a deed is impossible or repugnant, the court will so correct it as to make it conform to the probable intentions of the parties.

2. Where no such repugnancy or impossibility exists, the court will not (as against third parties who purchased the remaining interest of grantor at sheriff's sale, ignorant of his intentions in making his previous conveyance, except so far as the deed disclosed them) entertain an application to reform the description in a deed, although it has no doubt of the error of the description.

3. The facts that the tract in question was confirmed by the board of land commissioners, in the same language as the description in the deed: that, in the same language, it was excepted out of the confirmation of another part of the same general rancho to another claimant; and that eleven years have elapsed since the presentation of the claim—operate strongly against such application.

[See Cases Nos. 16,015 and 16,017.]

OPINION OF THE COURT. The claim for the Rancho Cañada de Guadalupe, La Visitacion y Rodeo Viejo, granted by Governor Alvarado to Jacob P. Leese, July 31, 1841, was finally confirmed to Henry R. Payson, with the exception of a certain tract which had been sold by Ridley, the assignee of Leese, to parties from whom Pierce derived title. For this excepted tract William Pierce duly presented his claim and obtained a final decree of confirmation. In the decree in the Payson case the land excepted from its operation is described in the language of the deed under which Pierce claimed, and, in the Pierce suit the land confirmed to him is described in the same terms. As the deed describes the tract by courses and distances, and as its execution and validity are not disputed, it would seem that there should be no difficulty in running off and establishing the lines. But, on attempting to apply the calls of the deed to the ground, most embarrassing questions have arisen. It is found that of the three last courses mentioned in the deed one is partly, and two others are wholly, in the waters of the Bay of San Francisco. These courses, as given in the deed, are as follows: "Thence east, 37 chains 37 links; thence south, 75° 30' east, 44 chains 16 links; thence north, 18° east, to place of beginning."

In running the lines called for in the deed and decree, taking them as true, the surveyor found that the first of these courses could not be completed without running into the bay. He therefore stopped at the shore, leaving the length of the course less by 3 chains and 2 links than that called for. The next course, if run in the direction and to the length called for, would have terminated at a point in the bay nearly 5/8ths of a mile distant from the point on the shore at which the surveyor stopped; while the last course would, in like manner, be wholly in the bay, terminating at a rock on the shore from which the survey began. It will be observed that, in each of these courses, except the last, distance is given as well as direction. It might seem, therefore, that the first two must have been surveyed and their lengths determined by actual measurement. But this, if the deed is to be literally followed, is evidently impossible; for the 14th, or next to the last, course in the deed, is a point on the bay more than half a mile distant from the shore, and inaccessible to the surveyor. It was therefore impossible for him to determine the length of this course by measurement, or to ascertain by observation how its points of termination bore from the point of beginning. It is possible, however, that the surveyor, after running out the previous courses on land, may have drawn the courses on his map and determined their length by calculation. But this seems highly improbable. The official survey has followed, with some slight variations, the calls of the deed—except that on reaching the shore in the

13th course, the margin of the bay is meandered to the place of beginning, and the remainder of the 13th, together with the 14th and 15th courses, is discarded, as including lands not embraced within the original grant.

To this survey the claimants of the tract and the United States object. It is contended that the line of a fence, erected in the winter of 1851–2, should be adopted as the true boundary of the tract. It appears that, in 1849, Leese, the grantee, conveyed the entire tract to Ridley. In January, 1851, Ridley conveyed to Hammond, Vokes, and Gorham the tract now in question, and known as "Visitacion Valley." In September, 1851, Gorham released to Hammond and Vokes, and in the same month Hammond conveyed to Vokes. In October, 1851, Vokes sold to Eaton and Bryant, but the deed was to Eaton alone. The present claimants derive title from Eaton. In July, 1851, all the right, title, and interest of Ridley in and to the remaining portion of the rancho was sold under execution by the sheriff of the county. The claimant, Payson, derives title from the purchaser at this sale. The fence in question was erected by Eaton and Bryant in the winter succeeding the sheriff's sale. It does not appear that any attempt was made to place it on the lines called for in the deed. On the northerly side a line indicated by some stakes was followed, but by whom these stakes were planted, or with what object, does not appear. On the southerly side of the valley the fence was erected on the hill side, about one-third the distance from the base to the crest, in accordance, it would seem, with a general idea derived by Bryant and Eaton from Vokes that the land purchased included the valley and the slope of the hills to about that distance. It does not appear that Ridley was aware of these proceedings. No proof is offered that he pointed out the land inclosed by the fence as the tract sold by him, or that he has in any way indicated an intention to sell any other tract than that described in the deed. An attempt is made by Mr. Matthewson, the surveyor, to reconcile the calls of the deed with the lines of the fence. He observed that the line of the fence begins at the rock admitted to be the point of beginning and ends on the shore of the bay at a point from which the point of beginning bears north 18° 23' east magnetic. This last course agrees within 23' of the last course mentioned in the deed, taking it, also, as magnetic. Mr. Matthewson was of opinion that this coincidence was too remarkable to be accidental, and therefore supposed that the fence was intended to be placed on the lines described in the deed, especially as it seemed far more probable that the last course was determined by observation, and that the surveyor obtained the bearings of the point of beginning by sighting it with an instrument placed on the

land, than that he laid down by calculation two courses and part of a third wholly in the water. But in attempting to make the calls of the deed conform to the lines of the fence he is obliged to alter three of them by substituting a southwesterly for a northwesterly direction. But even with this alteration the lines do not exactly coincide. In fact no one of the courses of the fence corresponds with a course described in the deed. The difference, however, is slight, and the tract enclosed is substantially the same. The hypothesis of Mr. Matthewson derives some additional probability from the fact that the tract granted seems to have been known as "Visitacion Valley," though it is not so named in the deed. It would seem probable therefore that the whole valley was intended to be granted, bounded on either side by lines drawn along the slope of the hills at a uniform distance from their base. On the south side the line must be located along the falda or hillside, whether we take the courses of the deed as magnetic or as true, or adopt the line of the fence. It would seem probable that a corresponding line was intended to be adopted as the boundary of the valley on the northern side, and not a line running through and excluding a portion of the level land. On the other hand the area of the tract included in the survey, as proposed by Mr. Matthewson, is more than 1,100 acres, while the deed mentions the extent of the land at 700 acres, "more or less." That its extent was not accurately known is evident, but a difference of 400 acres between its actual and its supposed area is so great a discrepancy as to afford an argument of some force against Mr. Matthewson's theory. That the deed was intended to convey the tract surrounded by the fence is also rendered probable by another circumstance. If the order of the courses be reversed, not only will the last course, if taken as the first, strike the shore at or near the termination of the fence line, but the corner of the survey on the northwest will be found to be identical with the northwest corner of the fence—thus affording corroboration of the theory that the tract conveyed and the tract enclosed were intended to be the same.

It is also to be observed that on the hypothesis that the courses in the water were obtained by calculation it is difficult to imagine why the length as well as the direction of the last course was not given. The fact that the direction alone is mentioned leads to the inference that the surveyor must, after measuring the other courses on land, have fixed his instrument on the shore, and obtained merely the bearings of the point of beginning, being unable to measure its distance as the line ran across the bight of the cove, forming the chord of the curve formed by the shores of the bay. Again, if the courses were, in fact run, as mentioned in the deed, it would

appear almost inevitable that the surveyor would terminate his land courses on the shore, leaving the remaining ones to be determined. It would hardly happen that any course would be partly on land and partly in the water; that is, would commence at a point some distance inland and terminate at the water. And yet this must have occurred, whether the courses are taken as true or magnetic.

All these considerations incline me strongly to the belief that an error in the description has occurred; and, probably, in the courses indicated by Mr. Matthewson. It seems very improbable that the purchasers would, within less than a year after they acquired title, have gone to the great expense of surrounding a tract of land with a fence, if they knew or suspected that the land conveyed to them had entirely different boundaries.

But, whatever be the plausibility or probability of this conjecture, I have been unable, after much consideration, to see that in this proceeding and at this stage, I am justified in setting aside the final decree and reforming the deed, the description of which it recites. The fence, we have seen, was erected in 1852. In 1853 a survey of the tract following the line of the fence was made. This survey must have apprised the owners that the boundaries of the tract enclosed, in no respect corresponded with the calls of their deed. No application was made to the board for a confirmation of any other tract than that described in the deed. A confirmation of that tract described in the language of the deed was obtained. And the same tract, similarly described, was excepted out of the confirmation to Payson, the claimant of the remainder of the rancho. No application to correct either of these decrees was made in this court; and they have both become final and conclusive. It is only where a survey is made under them that, after a lapse of nearly eleven years from the date of the presentation of the claim, that this court is asked under color of correcting the survey, to set aside the decrees and reform the deed in accordance with the alleged intention of the parties. If the description in the deed were impossible or repugnant, the court would, necessarily, be obliged to construe it and to correct its calls so as to make them conform to the probable intention of the parties. But the tract partly on land and partly on water, described in the deed, may have been intended to be granted, though it seems to me highly improbable. The surveyor who furnished the description may have measured the land courses and have obtained the others by calculation. And, as against third parties, who purchased the remaining interest of the grantor at sheriff's sale, ignorant of his intentions in making his previous conveyance, except so far as the conveyance disclosed them, it has appeared to me that this application to reform it cannot, in this proceeding, be entertained.

The official survey has strictly pursued the courses of the deed, taking them as true. But this seems at variance with the legal presumption in such cases. "A contract that land shall be surveyed in square, to the cardinal points, is well performed by a survey made according to the magnetic meridian. It being doubtful whether the true or magnetic meridian was meant, the popular and not the technical meaning must govern." Finnie v. Clay, 2 Bibb, 351. In Vance v. Marshall, 3 Bibb, 148, the magnetic, and not the true, meridian was held to be the proper guide for ascertaining the beginning of a survey. No proof is offered as to the person by whom, or the manner in which the survey on which the deed was founded was in fact made. The probabilities of the case are strongly in favor of the legal presumption, for at the date of the survey the true meridian had not been determined, as has been since done by the United States officers.

My opinion is that I have no alternative but to follow the description in the deed and decree, adopting the calls of the former, if any discrepancy arising from clerical errors be found—and that the courses are to be taken as magnetic. The survey is to stop on reaching the shore, which is thence to be meandered to the point of beginning. The land below high water was not included in the original grant, and, of course, cannot be included in the survey of a subgrantee. With regard to Payson's survey, the only objection is as to the location of the southern exterior boundary. It is claimed that the line should run from the Portezuelo, along the crest of the hills to the Miconada of San Bruno, the point of beginning. The grant describes the land as bounded on the west by the Camino Real and the Portezuelo, on the south by the rancho of Jose Sanchez. The diseño shows unmistakably that the southern line was intended to run along the southern base of the San Bruno mountains, from the bay to the road to San Jose, the road forming the western boundary. On the south lay the rancho of Sanchez, known as "Buri Buri." But for the ascertainment of this line between these ranchos, we are not left to the calls of the grants, or the indications of the diseños. A judicial possession was given, and measurement made of the boundaries of the Buri Buri. The true location of the line thus established was considered and determined by this court in the Buri Buri case, the owners of both ranchos and all others interested being parties to the proceeding. The establishment of the northern line of Buri Buri necessarily fixes the southern line of the adjoining rancho, as the grant of the latter calls for the former, as bounding it on the south. The official survey in this case has pursued the common boundary line from the

bay to the Camino Real, running at or near the base of the hills. as indicated by the diseño, and as the line was fixed by the officer giving judicial possession. On reaching the road the boundary line turns to the north, following the road to and beyond the Portezuelo—thus forming the western boundary—the Camino Real and the Portezuelo the western boundary, as called for in the grant. It appears to me that the official survey is, in this respect, correct. It is therefore approved. except as to the lines by which the excepted tract confirmed by Pierce—which must be modified as hereinbefore directed. It being understood that said excepted tract shall in no case be surveyed so as to embrace lands within the exterior limits of the original grant and diseño—and that. if the lands of the deed, when run, are found to include any such lands they must be modified so as to exclude them.