## Everidge v. Martin.

(Decided May 5, 1915.)

### Appeal from Letcher Circuit Court.

1. Judgment—Parties.—A judgment of a court does not bind one who is not before the court, and only binds parties to the suit, in which the judgment is rendered, and their privies.

2. Adverse Possession—Boundaries.—Where one enters upon lands claiming title under a patent, deed, or title bond, and claims to the extent of his boundaries, he is in the actual possession of all of the land embraced in his patent, deed, or title bond, which is not at the time held adversely by another.

3. Adverse Possession—Boundaries.—One residing upon a tract of land, which adjoins another tract, to which he has a patent, deed, or title bond, and claims to the extent of the boundaries of same, is in possession of the adjoining tract, if same is not in the actual adversary occupancy of another.

4. Adverse Possession.—Two persons can not have the actual constructive or constructive possession of the same tract of land, at the same time.

5. Adverse Possession.—One, in order to be actually possessed of a tract of land, does not have to have a person residing upon the land, or have a crop ·growing upon it, if he has an enclosure upon it, and claims it under a deed, patent, or title bond, but his possession may be shown by acts which indicate an intention on his part to hold the exclusive possession of it.

6. Vendor and Purchaser.—One who purchases land with notice that another has an equitable right to .it, takes subject to the equity.

7. Notice.—The general doctrine is, that whatever puts a party on inquiry, amounts in judgment of law to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, and would lead to the knowledge of the requisite facts by the exercise of ordinary diligence and understanding.

8. Evidence—Written Instruments.—An ancient written document is admissible in evidence without direct proof of its execution, if it appears to be thirty years of age, is found in the proper custody, and is free from suspicion, the instrument in such state of case being said to prove itself. If it purports to convey title to land, proof of the possession of the land by the one claiming under the document during the existence of the document must precede its admission.

SALYER & BAKER and HALE & NEWMAN for appellant.

SMITH & COMBS, D. D. FIELDS, MORGAN & HARVIE and O'REAR & WILLIAMS for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

On the 27th day of March, 1858, a patent was granted to Silas Callahan for one hundred acres of land, described as being situated on the Wolf Pen Branch of Carr's Fork, in what was then Letcher County, Kentucky. On October 29th, 1860, a patent was granted to the same Silas Callahan for one hundred acres of land, upon a survey made on the 4th day of October, 1858, and described as being in the county of Letcher, on top of the mountain, and head of the left hand fork of Trace Fork, etc. The lands embraced by these two patents adjoined, and a large part of one of them is embraced within the other. The last named patent calls for the Bear Wallow, as the place of one of its corners.

On the 16th day of March, 1866, Silas Callahan sold these two tracts of land to one John Amburgy, and delivered to him a deed, which was executed in the presence of two attesting witnesses, but Amburgy failed to ever have the deed proven before the clerk of the county court, or recorded. On the 1st day of October, 1866, John Amburgy sold four hundred acres of land to An-

derson Amburgy, and executed and delivered to him a deed, which was executed in the presence of two attesting witnesses, one, of whom, went before the clerk of the county court and proved his signature and the grantor, but failed to prove the signature of the other witness. This deed embraced the land which was covered by the two patents to Callahan above mentioned. Nearly all of this four hundred acres of land is now, and since its formation, lies in Knott County, and a small portion of it in Letcher County.

On the 12th day of March, 1887, John B. Adams sold and conveyed to Anderson Amburgy a tract of land on the Camp Fork of Rockhouse, which had a corner situated at the Bear Wallow. When Knott County was created, the two tracts of land above mentioned as having corners at the Bear Wallow, were left in Letcher County, except a very small portion of the one hundred acres Silas Callahan patent, while the other lands mentioned are situated in Knott County, except a small part. Some time after 1887, but the record does not disclose when, Anderson Amburgy slew a man, and to escape the penalty of the law, fled the country, and never returned. After acquiring the above lands, Anderson Amburgy lived upon the Silas Callahan patent, which lay upon the Wolf Pen branch of Little Carr, and after he left the country, his wife, or a tenant, continued to live in the same house until 1898, when Anderson Amburgy and his wife sold and conveyed a boundary of land to one Theodore Sparkman, who shortly thereafter sold and conveyed the same boundary of land, which had been conveyed to him by Amburgy, to the appellee, Tandy Martin. It seems that the one hundred acre Silas-Callahan patent, which cornered at the Bear Wallow, and the other lands which were on the Camp Fork of Trace or Rockhouse, were not included in the deed from Amburgy to Sparkman, nor in the deed from Sparkman to the appellee.

The appellant, F. M. Everidge, was the owner of two tracts of land which adjoined each other, and one of which was patented to James Collins on the 18th day of May, 1851, and containing one hundred and fifty acres, and the other was patented to James Collins on the 10th day of March, 1844. These two tracts of land covered a portion of the one hundred acre Callahan patent, which cornered at the Bear Wallow. The two Collins patents

ante-dating the Callahan patents, the appellee concedes that all of the Callahan patent, which is covered by the two Collins patents, is owned by the appellant, Everidge. A small portion of the one hundred acre Callahan patent, which was granted on the 18th day of March, 1857, is, also, covered by the Collins patent of the 18th day of May, 1851.

On the 14th day of May, 1909, the appellee filed a petition in equity in the Knott Circuit Court against the heirs of Silas Callahan and John Amburgy, and against Anderson Amburgy, and Theodore Sparkman, in which he sought to procure the court to cause its commissioner to convey to him the lands embraced in the two Callahan patents, and other lands, and alleged as the basis of his action, that Anderson Amburgy had sold and intended to convey these Callahan surveys to Theodore Sparkman, as well as the other lands embraced in the deed from Amburgy to Sparkman, and that Sparkman had sold all the lands that Amburgy owned to him, appellee, and that he paid Sparkman for same, and that these two Callahan surveys were included in the lands that Sparkman had sold to him, but by mistake, Anderson Amburgy failed to include them in the deed which he executed to Sparkman, and by the same mistake Sparkman failed to include them in the deed which he executed to appellee, and prayed the court to cause a deed to be made to him for the said lands. Anderson Amburgy and Sparkman were both proceeded against by warning order, upon the affidavit of the appellee that they were non-residents of the State, and that he did not know the postoffice address of either of them. The Knott Circuit Court rendered a judgment on the 22nd day of July, 1909, directing its commissioner to convey to appellee the lands embraced in the Callahan patents, which the commissioner did on that day. In a few days thereafter appellee filed this suit in the Letcher Circuit Court, alleging that the appellant was continually trespassing upon the lands embraced in the Callahan patents, and upon the tract of land embraced in the deed from Adams to Amburgy which cornered at the Bear Wallow, and prayed an injunction against the appellant to restrain him from further trespassing upon the lands. The appellant filed an answer and amended answers, in which he claimed the land embraced in the Callahan patent, which corners at the Bear Wallow, and a small por-

tion of the Adams survey, and a very small portion of the other Callahan patent, upon the ground that certain portions of those patents were embraced in the two patents to Collins above mentioned, and of which he was the owner, and, also, claimed to be the owner of the remainder of the Callahan patent cornering at the Bear Wallow, by reason of a writing signed by Anderson Amburgy in 1873, evidencing his sale of this land to one Vermillion, and an assignment of the writing to appellee in 1877. He, also, claimed to be the owner of the land embraced in the Callahan patent by· adverse possession for more than thirty years, and that the judgment by which the appellee obtained a deed to the land in the Knott Circuit Court was ·void as to him, and, also, relied upon the champerty statute. The appellee, by reply, traversed the allegations of the answer, and denied the execution of the writing under which appellant claimed title from Anderson Amburgy, and alleged that it was a forgery. These allegations were denied by the appellant. After the taking of considerable proof, the case was tried and the court adjudged that the appellee was the owner of all of the lands embraced in the two patents to Callahan, except the portions covered by the two patents to Collins, and awarded the appellee a writ of possession for the portion of the lands so adjudged to be his. From this judgment the appellant has appealed to this court, and the only question to be determined, is whether the court below erred in adjudging the appelle to be entitled to recover that portion of the one hundred acre patent to Callahan, which lies in Letcher County, and corners at the Bear Wallow, and which is not covered by the two patents to Collins.

It appears from the evidence, that in the year 1898 or 1899, that the appellee was aware that the appellant was claiming to be the owner of the lands embraced in this Callahan patent, and that he continued to know such to be the fact from that time, up to the bringing of his suit, in the Knott Circuit Court, but he failed to make the appellant a party to his suit, or to give him an opportunity to show cause in that action, why the court should not cause the land to be conveyed to appellee. Under these circumstances the judgment in the Knott Circuit Court, by which the appellee secured the commissioner's deed, cannot in any way prejudice the rights of the appellant in the land in controversy. A

judgment of a court does not bind any person, except such persons as are parties to the suit or their privies, and they in nowise bind a party who is not before the court. Sims v. Sims, 88 Ky., 642, 11 S. W., 665; Meadows v. Goff, 90 Ky., 540, 14 S. W., 535.

The appellant never resided upon the particular tract of land in controversy, neither did he ever have a tenant residing upon it, but it adjoined the lands and formed a part of a large tract of land owned and claimed by him, and upon which he had continuously resided for more than twenty years before the bringing of this suit. While Anderson Amburgy, and those claiming under him, have resided continuously upon the Callahan patent, which is situated in Knott County, and adjoins the one in controversy, during the same period of time, it is very evident, that, after Anderson Amburgy executed and delivered the bond for title, under which the appellant claims, he thereby gave up his possession, or any claim that he had to the possession of the lands in the Callahan patent in controversy. From the time of the execution and delivery of the bond for title from Anderson Amburgy to Vermillion, there could have been no actual or constructive possession of the lands in controversy by Amburgy, nor any one claiming under him, since he had parted with his possession of the land, as well as his right to possession, and never performed any act indicating his purpose to seek a re-entry upon it, and no one claiming under him had any deed which embraced it, until the deed from the commissioner of the Knott Circuit Court was made in 1909. Appellee's tenant never resided upon the land in controversy, and neither did he ever perform any act indicating either ownership or possession of it, and the delivery by the commissioner of the deed to him, although he had a tenant residing upon the lands adjoining, would not have given him actual or constructive possession of the land, as it was already in the actual possession of the appellant.

The writing under which appellant claims the land in controversy describes it by metes and bounds.

Where one enters upon land, claiming title by virtue of a patent, deed, or title bond, and claims to the extent of the boundaries of his paper title, he becomes possessed of the whole, so far as it is not adversely held by others, and is actually possessed to that extent. Mc-

Lawrin v. Salmons, 11 B. Mon., 96; Hoskins v. Cox, 2 B. M., 306; Baird v. Bell, 1 Duvall, 384; Beller v. Cox, 9 B. M., 312; Smith v. Lockbridge, 3 Litt., 19; Jones v. Childs, 2 Dana, 25; Fox v. Hinton, 4 Bibb, 559; Thomas v. Harrow, 4 Bibb, 563; Maury v. Vaughn, 1 A. K. M., 452.

A conveyance of lands to one who is actually occupying the adjoining lands, will give such one a constructive actual possession of the lands so conveyed to him if at the time they are not in the actual possession of some one else. Griffith v. Dicken, 2 B. M., 20; Fish v. Branaman, 2 B. M., 379.

If one, by living upon one tract of land under a deed, patent, or title bond, and claiming to the extent of its boundaries, is thereby in the actual possession to the extent of his boundaries, there can be no good reason in holding, that where one owns several tracts of land adjoining each other, and all of which he holds under deeds, patents, or other writings, and claims to the extent of his boundaries, is not in the actual possession of the adjoining tract, as well as the one upon which he lives, if there is no actual adverse occupancy of either one of the tracts. The appellant, as stated above, for more than twenty years before the bringing of this suit, lived upon lands adjoining those in controversy, claiming to own it to the extent of his bond for title, and there was during such time no other actual adverse occupancy of it. The actual constructive possession of this land by the appellant precluded any other such possession of it, because two persons cannot have the actual constructive or constructive possession of the same tract of land at the same time. Jones v. McCauley's Heirs, 2 Duvall, 15.

In 1894, or in 1895, and before appellee claims to have bought this land, the appellant caused two fields on it, to be cleared, and fenced, and cultivated, and eight or nine years before the bringing of this suit, he caused another field to be cleared, fenced, and cultivated upon this land, near the Bear Wallow. From time to time, these fields were cultivated up to the time of the bringing of this suit either by appellant or his tenants. This made his possession of this tract of land open, actual, visible, and notorious. It is not necessary that one, in order to be actually possessed of land, should have a crop growing on it, or a person residing in the house on the land, if he has an enclosure upon it, and

holds under a deed or bond, but it may be shown by any acts, which indicate an intention on his part to hold the exclusive possession of it. Brumfield v. Wells, 4 Bibb, 388; Childs v. Stevens, 3 A. K. M., 340; Bodley v. Coghill's Heirs, 3 A. K. M., 614. The true criterion of the continued possession of land is the continued enjoyment of the profits of it. Fox v. Heislore, 3 Litt., 384.

If Anderson Amburgy executed and delivered the writing relied upon for title and possession by the appellant, that he could not recover possession of this land of appellant, is very clear; upon the other hand, appellant could require him to convey the land to him by deed. The proof shows that this land was bought from Vermillion by the father of appellant, who paid him or Anderson Amburgy, the value fixed upon it in the sale. The open, visible, and notorious actual possession of the land by appellant did not continue for fifteen years before the bringing of this suit, but it was in existence at the time that the appellee claims to have bought it from Sparkman, and continued for more than ten years after that time before he obtained the deed of the commissioner of the court for it. It is true that under Section 494, of the Ky. Statutes, if this land had been sold to him for a valuable consideration, without any notice upon his part of the claim of the appellant to the land, and it had been conveyed to him, he would have been entitled to have recovered it, but for more than ten years after he claims to have bought it, he had a mere equity in it, and the appellant's equity was very much older than his. The actual possession of the land in controversy was in the appellant, and that was coupled with the equity which he held. We are not unmindful of the doctrine which holds that one in possession under an executory contract for the purchase of a tract of land does not hold it adversely to his vendor, unless he considers the contract executed, and is relying upon the possession and title that he has, and not continuing to look to the vendor for title. The appellant states that he claimed the adverse actual possession of the land, and had for many years last past. There is no evidence which tends to show that he was looking to Amburgy for anything additional, and it might be presumed, that as Amburgy had fled the country and was not heard of, he considered the contract an executed one and not an executory one, but whether the holding of the appellant was not adverse

to Amburgy or not, does not matter very much with a proper determination of this case. Amburgy could not have recovered the land from the appellant, and neither could any vendee of his do so, who acquired title with notice of appellant's equity. One who purchases with notice that another has an equitable right in the land, takes subject to the equity. Owings v. Myers, 3 Bibb, 378; Arterburn v. Gwathmey, 3 Bibb., 312; Dorsey v. Cox, 4 Bibb., 45; Thompson v. Mason, 4 Bibb, 196; Edwards v. Morris, 2 Mar., 67; Willis v. Vallett, 4 M. T., 186.

The proof undisputably shows, that in 1898, when appellee claims he bought this land, appellant then had a tenant living upon his land, nearby the land in controversy, who, by his directions, in 1894 or 1895, cleared a field near the center of the land in controversy, fenced it, and cultivated it, and following that, a second field, and this was certainly the strongest kind of evidence, that appellant was asserting a claim to the property, exclusively in himself. Actual possession of land under an executory contract of purchase is always notice to would-be purchasers of the fact, that the possessor, who claims to own it, has an interest in the property. Goins v. Allen, 4 Bush, 609. In 1898 or 1899, the appellee received actual notice of appellant's claim, when he stopped the would-be purchaser of the land from appellee, from working upon it, and went in person and saw the appellee, and talked with him regarding it, and between that time and the procurement of the commissioner's deed by the appellee, appellant further improved the land by having another field opened out upon it.

"It is a general rule that whatever puts a party on inquiry, amounts in judgment of law to notice, provided the inquiry becomes a duty, and would lead to a knowledge of the facts by the exercise of ordinary intelligence and understanding. Wherever facts put a party on inquiry, constructive notice will be imputed to him, if he designably abstains from inquiry for the purpose of avoiding notice." 29 Cyc.; 1114.

This court, in Willis v. Vallett, *supra,* quoting from 4th Kent's Commentaries, says: "The general doctrine is, that whatever puts a party on inquiry, amounts in judgment of law to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, and would lead to the knowledge of the requisite fact by

the exercise of ordinary intelligence and understanding.'' Russell v. Petree, 10 B. M., 184; Bennett v. Titherington, 6 Bush, 196.

The appellee contends earnestly that the title bond produced by the appellant is not competent evidence, because its execution was denied, he insists that proof must be made of its execution, and that it was blemished by alterations. The rule, as stated in 17 Cyc., 443-444, is: "An ancient document is admissible in evidence without direct proof.of its execution, if it appears to be of the age of at least thirty years, and is found in the proper custody, and is unblemished by alterations, and otherwise free from suspicion, the instrument being said in such a state to prove itself. Harlan v. Howard, 79 Ky., 373; Burgin v. Chenault, 9 B. Mon., 285; Winston v. Mastersore, 9 Dana, 228; Botts v. Chiles, 2 T. B. M., 36, 6 Dana 110, 9 Dana, 233, 8 B. M., 20, 17 Cyc., 445.

"To require proof of the execution of such a document would entirely defeat the purpose of the rule, because after the lapse of thirty years after the time of the execution of the document the witnesses are presumed to be dead, or beyond the jurisdiction of the court."

In 17 Cyc., 444, it is said: "A subscribing witness to an ancient document will not, according to the weight of authority, be required to be called, although it appears that he is living, and actually in the'court at the time, and this whether the testimony of the witness would tend to overthrow or establish the document. This rule is adopted for common convenience and is founded upon the great difficulty of proving the due execution of a deed after an interval of many years. * * * The fact that an instrument is an ancient document does not, however, affect its admissibility in evidence further than to dispense with proof of its genuineness, where it is otherwise admissible."

This bond purported to have been executed in the year 1873, and it was proven to have been in the hands of Vermillion, who was the proper custodian of it up to 1877, which was more than thirty years before its offer as evidence in this case. Since that time it has been in the custody of the appellant, who was the proper custodian of it, and the possession of the land accompanying it during this time would make it admissible as evidence. The charge that it was blemished consisted

in a statement by appellee that he could see some other letter, under the name of the appellant, which the appellant explains by saying, that Vermillion so started to write when it was assigned to him, which caused the appearance of the letter, and was a mere mistake upon the part of Vermillion. These circumstances are not such as to render it inadmissible. Vermillion, it seems, owned a portion of one of the Collins patents, which adjoins the land in controversy, and we see nothing which renders the belief, of the sale of that tract of land, by Amburgy to Vermillion, as at all unreasonable or not to be believed. The fact that when Amburgy came to convey the land, adjoining this in Knott County to Sparkman, and left out of the conveyance the tract in controversy, is somewhat persuasive evidence to us, that he was aware of having previously sold the land in controversy to Vermillion.

We are, therefore, of the opinion that the court should have adjudged the appellant to be the owner of such a portion of the Callahan patents, as are embraced and covered by the two patents to Collins, and, also, that portion of the lands embraced in the Callahan patent for one hundred acres, which corners at the Bear Wallow, and is embraced by the title bond from Amburgy to Vermillion, should have been adjudged the property of appellant. To the extent that the court adjudged that the land embraced in the Callahan patent, and which is conveyed by the title bond from Amburgy to Vermillion, to be the property of the appellee, and awarded him a writ of possession for the same, the judgment is reversed, and the remainder of the judgment is affirmed, and the cause is remanded to the court below, with directions to proceed in conformity with this opinion.