## Damron, et al. v. Shelby Creek Coal Company.

(Decided February 9, 1917.)

### Appeal from Pike Circuit Court.

1. Adverse Possession—Patents—Title.—Where one claiming to be the owner of several adjoining tracts of land, to all of which, save two small parcels of vacant land, he has acquired title, takes actual possession of same by fixing his residence upon some part thereof and causing a line surrounding them to be surveyed, well defined and marked, so as to embrace the whole; and for as much as fifteen years continues such actual possession thereof adversely to all others, claiming the whole to the well defined, marked boundary surrounding all of them, another or others obtaining a patent or patents to one or both of the vacant tracts included in such boundary, after such actual, adverse possession of fifteen years, will acquire no title thereto under or by virtue of such patent or patents.

2. Adverse Possession—When Patent Will Not Confer Legal Title.— Although one may claim title to land under a patent from the State, the patent will confer on him no legal title, to the land, if another has by previous actual, adverse possession for fifteen years, acquired title thereto dehors a patent.

STRATTON & STEPHENSON for appellants.

YORK & JOHNSON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE— Affirming.

This action was instituted in the court below by the appellee, Shelby Creek Coal Company, a corporation engaged in the business of mining, to quiet its title to a

large body of land lying on Caney creek, a tributary of Shelby creek, in Pike county, to a part of which appellants make claim under two patents issued by the Commonwealth of Kentucky, in the year 1909; the first purporting to grant to the appellant, L. T. Damron, an eight acre tract of land, and the second, to the appellant, Wheeler Damron, a forty-seven acre tract of land, both lying on the left-hand fork of Caney creek. It is alleged in the petition that the entire body of land described therein, made up of various tracts or parcels, but included in one defined, marked boundary, had formerly been owned by Robert Damron, Sr., under various deeds and patents, but was sold by him in 1903, and by deed conveyed to Johnson, Briggs & Pitts, who shortly thereafter sold and by deed conveyed it to appellee; that appellee and its vendors, Johnson, Briggs & Pitts and Robert Damron, Sr., had owned and had the actual, adverse possession of this entire body of land, claiming it to a well defined marked boundary, including the whole, for thirty years prior to the institution of the action, and more than fifteen years before the date of the patents issued to the appellants, L. T. and Wheeler Damron; and that it embraced the two small parcels of 47 and 8 acres upon which the latter procured their respective patents; that the lands included in these two patents were not vacant lands when entered and surveyed by L. T. and Wheeler Damron, or when the two patents were issued to them, which fact was well known to them; and that they with knowledge of appellee's title thereto fraudulently procured the issuance of the two patents in question. The answer of appellants admitted appellee's title to, and possession of, the lands described in the petition, except the two parcels of 8 and 47 acres, upon which they (appellants) procured the two patents in 1909, and alleged title in themselves thereto, under the patents procured by them as stated. The averments of the answer were controverted of record and after the taking of proof and submission of the case, the court rendered judgment declaring appellee owner of the lands described in the petition, including the two tracts covered by appellants' patents, and quieting its title to the whole to the outer boundary claimed. Appellants complain of the judgment, hence this appeal.

We think the judgment is sustained by the weight of the evidence. It is true that the evidence does not convincingly show that Robert Damron, Sr., appellee's re-

mote grantor, had a title of record to the two small parcels of land covered by the appellants' patents; but it does show with reasonable certainty that he did have title by deeds or patents to substantially all of the several tracts embraced by the boundary set forth in the petition, parts of which surround the parcels patented to appellants; and with like certainty that the two parcels covered by the patents of the latter are also included in the same boundary. The evidence further shows that as far back as twenty-five or thirty years before the bringing of appellee's suit, Robert Damron, Sr., in order to perfect his possession of the lands then claimed by him, to the most, if not all of which, he had theretofore acquired title, caused the whole thereof, including the two parcels covered by appellants' patents, to be surveyed and embraced in a single complete, outer boundary which was at the time well and fully defined and marked. When, or about the time this was done, Robert Damron, Sr., took up his residence upon the land, or a part thereof, within the marked boundary embracing the whole, and from that time until he sold and conveyed it by deed to Johnson, Briggs & Pitts, a period of more than fifteen years, he continued to reside upon, and remain in the actual, adverse possession of the land, including the two parcels covered by appellants' patents, claiming them to the well defined, marked boundary embracing the whole. When in 1903, he sold the lands to Johnson, Briggs & Pitts, the deed made them described the land as embraced within the boundary including the whole, and the same is true of the description contained in the deed by which the latter shortly thereafter conveyed the lands to the appellee.

According to the evidence, Johnson, Briggs & Pitts, after the conveyance of the land to them by Robert Damron, Sr., held the actual, adverse possession thereof until they conveyed it to appellee, following which and down to the institution of this action, the actual, adverse possession thereof has been held by the latter; such possession extending all the while, as did that of Robert Damron, Sr., and Johnson, Briggs & Pitts to the extent of the well defined, marked boundary embracing the whole.

It will thus be seen that at the time of appellants' entry upon, and survey of, the two small tracts of land claimed by them, and when their patents were issued, both tracts were in the actual, adverse possession of ap-

pellee, and such possession had previously and continuously been held by appellee and his grantors, Johnson, Briggs & Pitts and Robert Damron, Sr., for more than fifteen years. So when appellants' entry and survey were made and patents obtained, appellee's title or right to the two tracts of land covered by the patents had been perfected by his and his vendor's previous actual, adverse possession thereof, for more than fifteen years; and as by reason of such possession the statute of limitations would have tolled the title of the state before the patents to appellant's were issued, it would and did also bar any title which appellants might otherwise have claimed under the patents.

As a rule, if there be no other or older grant from the state to land covered by a patent under which a party claims, the patent confers on him the legal title, unless another has by actual, adverse possession acquired title thereto, dehors a patent. Ritchie v. Owsley, &c., 137 Ky. 63.

No error being perceived in the judgment it is affirmed.