## Martin, et al. v. White.

(Decided November 9, 1917.)

### Appeal from Powell Circuit Court.

1. **Adverse Possession—Boundaries.**—Where one resides upon any part of a tract of land under a patent, deed or title bond his posses-

sion will extend to the boundary contained in the patent, deed or title bond, insofar as the land is not adversely held in actual possession by another. The same would be true if his entry and possession were made and taken without written evidence of title, if his possession, actual and adverse to all others, continued for as much as fifteen years and was claimed all the while to the well defined, marked boundary embracing the whole.

2.    Adverse Possession—Title or Right Acquired.—It is also a well recognized rule of law that although one may claim title to land under a patent from the state, the patent will confer on him no legal title to the land, if another by a previous actual, adverse possession for fifteen years, acquired title thereto dehors a patent or deed.

HAYS & HAYS and A. T. STEWART for appellants.

J. B. WHITE, KELLY KASH and JOHN D. ATKINSON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE— Affirming:

The appellee, J. B. White, brought this action in the court below against the appellants, Lloyd Martin, Wm. Martin, Wm. Howell, James Cooper and John Willoughby, alleging in the petition his title to and possession of a particularly described tract of land lying on Red River in Powell county; that the land was devised him by the will of his cousin, Mrs. E. C. Chenault, and that he, his testatrix, and her vendors, immediate and remote, had held and been in the actual possession of the land, claiming it to a well defined, marked boundary, adversely to the appellants and all others for more than fifty years continuously next before and down to the institution of the action; that on or about the 12th day of January, 1916, and at divers other times since that date, and before the institution of appellee's action, the appellants wrongfully and illegally entered upon one hundred and fifty acres of the land mentioned, including what is known as "Groom's Mountain," while in the peaceful possession of appellee and his tenants, and wilfully cut down, destroyed and converted to their own use numerous trees and timber of value, growing on the land, and were yet continuing such trespasses.

The petition also alleged the insolvency of the defendants and the irreparable injury that would result to appellee from their continued trespasses committed on the land, unless restrained by an injunction from so doing. The prayer of the petition asked for an injunc-

tion against the appellants, the recovery of damages against them for the value of timber cut and converted by them, and that appellee be adjudged the owner of the land and his title thereto quieted.

The appellant, Wm. Martin, by separate answer, denied the acts of trespass alleged in the petition, also denied appellee's title or possession of the land, and alleged title in himself to the one hundred and fifty acres in question and his possession thereof, adversely to appellee; that the title to the land was conveyed him by deed from one David Thrasher, who, on October 15, 1915, procured a patent therefor from the Commonwealth of Kentucky, and that the appellant, Wm. Martin, upon receiving the deed from Thrasher, took possession of the land and has since continuously held such possession. The answer was made a counter-claim and by the prayer thereof the court was asked to adjudge the appellant, Wm. Martin, the owner of the land and quiet his title to same. The other appellants by answer severally denied appellee's title to the land, also his possession thereof, and alleged title thereto and possession thereof in the appellant, Wm. Martin, and that what cutting of timber they had done thereon was by his direction and under employment by him. The appellee's reply controverted all affirmative matter in the several answers of the appellants; and, in addition, alleged that the patent obtained by the appellant, Wm. Martin's vendor, David Thrasher, upon the land was void, because of the existence of an elder patent embracing it; also that the sale and conveyance of the land from Thrasher to appellant was champertous because appellee was then and prior thereto in the actual adverse possession thereof.

Although the action had been brought in equity, on motion of appellants it was transferred to the law docket for a trial by jury of the issues of fact made by the pleadings. The trial resulted in a verdict for the appellee. Appellants filed motion and grounds for a new trial, which the court overruled. Judgment was then duly entered upon the verdict, whereby appellee was declared to be the owner of the land, the appellants were perpetually enjoined from committing further trespasses thereon or otherwise interfering with appellee's peaceable possession thereof, and the latter was awarded his costs. From that judgment this appeal is prosecuted.

Only two of the several grounds urged by appellants in the court below for a new trial are seriously relied

on in this court for a reversal of the judgment complained of, viz., error of the trial court (1) in refusing appellants' request for a peremptory instruction directing a verdict in their behalf; (2) in instructing the jury and refusing certain instructions asked by appellants. The peremptory instruction was asked upon the ground that appellee's evidence failed to show his ownership or adverse possession of the land. Our consideration of the evidence compels us to overrule this contention. The appellee's evidence conduced to prove that what was known as the "Gay Farm," consisting of 440 5/10 acres, was originally owned by Robert D. Gay as far back as sixty years ago; that his ownership of and residence upon it continued until his death and it then became the property of his son, W. D. Gay, and daughter, Mrs. E. C. Chenault. When the son died some years later his interest was inherited by his sister, Mrs. Chenault, who, by will, devised the whole of the land to the appellee, J. B. White, and the latter at her death in 1913 took possession of the land and has since continuously held it through his tenants. No title papers, other than the will of Mrs. Chenault, showing appellee's derivation of title, were introduced in evidence. There was, however, some evidence to the effect that Robert D. Gay, at one time, had a deed or deeds of conveyance to the lands, but that they or the record that had been made of them were destroyed when the Powell county court house was burned in 1864. It is, therefore, apparent that appellee failed to show a paper title deducible from the Commonwealth. He did, however, introduce abundant evidence, furnished by numerous witnesses, many of them adjoining landowners and several of them persons of advanced years, that the Gays, father and children, had lived upon and been in the actual, adverse possession of the land known as the "Gay Farm" more than sixty years, during the whole of which time the land now claimed by the appellant, Wm. Martin, and known as "Groom's Mountain," was recognized as a part of the Gay farm and was claimed and controlled by the Gays as a part thereof. There was also evidence furnished by a report and plat of a survey of the Gay lands, made by one Jones in 1892, which shows that the Groom's Mountain land is a part of the Gay farm. This report of survey was introduced, identified and read in evidence. According to this survey there was in 1892, and is now a well defined, marked boundary of the Gay lands which embraces the Groom's Mountain tract now claimed by the appellant,

Wm. Martin, and quite a number of witnesses testified that for more than forty years the Gays and appellee, as their successor in title, had and held actual, adverse possession of all the land included in that boundary, claiming it to and with the boundary. In addition, there was much evidence to the effect that the Groom's Mountain land was occupied by various tenants of the Gays a greater part of the forty years before the institution of appellee's action; that more than fifty years ago Robert D. Gay caused a tenant to clear fifteen or more acres of the land on Groom's Mountain and to erect a small dwelling house and an outhouse thereon; and that some years later W. D. Gay caused an orchard to be planted on a part of the cleared land. The dwelling house then erected on the clearing was still standing in 1915 when the appellant, Wm. Martin, took possession of the land, and is now occupied by him. The witnesses referred to further testified that during the greater part of the fifty years since the land was cleared on Groom's Mountain by the tenant of Robert D. Gay, it had frequently been in cultivation and generally occupied by tenants of the Gays; that there were frequent intervals, however, sometimes of several months and sometimes as much as a year or more, that this land was unoccupied, but that it was at no time during the fifty or more years out of the possession and control of the Gays as a part of their lands included in the boundary of the whole. Many of the tenants testified as to their occupancy of the Groom's Mountain land and the Gays' possession thereof, and the leasing of it to some of these and other tenants was shown by written leases introduced in evidence by appellee. Appellee's evidence also conduced to show that all the Gay land, including the Groom's Mountain parcel, was originally embraced in a patent issued by the state of Virginia through Patrick Henry, then Governor, granting to Samuel Young a twenty thousand acre survey of land and that Robert D. Gay claimed to have derived title to his land through the Young patent. It is, therefore, manifest that even if appellee had not been in actual, adverse possession of the Groom's Mountain land at the time David Thrasher, the vendor of the appellant, Wm. Martin, obtained his patent therefor, the outstanding Young patent rendered Thrasher's patent void; and, furthermore, if appellee was then in actual, adverse possession of the land the sale and conveyance

thereof to the appellant, Wm. Martin, by Thrasher were champertous and void.

The appellants and others introduced by them, mainly relatives of Wm. Martin, in a general way denied the possession of the land by appellee and the Gays, but failed to specifically show its possession by any other person prior to the issual of the Thrasher patent. In fact, appellants' evidence showed no actual possession of the land, other than that of appellee and the Gays, until the purchase thereof by Martin of Thrasher.

While the evidence of appellants is contradictory of that of appellee, that of the latter was clearly sufficient to require the submission of the case to the jury. Where one resides upon any part of a tract of land, under a patent, deed or title bond, his possession will extend to the boundary contained in the patent, deed or title bond, in so far as it is not adversely held by another. The same would be true if his entry and possession were made and taken without written evidence of title, if the land were included in a well defined, marked boundary, and his possession actual, continued and adverse to all others, for as much as fifteen years, and was claimed all the while to the well defined, marked boundary embracing the whole. Everidge v. Martin, 164 Ky. 497; Dawson v. Shelby Creek Coal Co., 173 Ky. 796. The claim of appellee to the land here involved comes clearly under the rule of law last stated. On the other hand, the claim of the appellant, Wm. Martin, to the land seems to be barred by the equally well recognized rule that although one may claim title to land under a patent from the state, the patent will confer on him no legal title to the land, if another has by previous actual, adverse possession for fifteen years, acquired title thereto, *dehors* a patent or deed.

It is our conclusion that the evidence of appellee not only entitled him to a submission of the case to the jury, but was on the whole of such weight, notwithstanding the conflicting evidence introduced for the appellants, to authorize the verdict returned by the jury. If right in this conclusion, it follows that the trial court did not err in refusing the peremptory instruction.

Appellant's complaint of the instructions is without merit. No error is pointed out by counsel in the instructions that were given, and while one or two of those offered in their behalf might with propriety have been given by the court, as those actually given contained all

the law necessary to the proper guidance of the jury in arriving at a verdict, the refusal of the instructions asked by appellants was not error.

The record discloses no cause for reversing the judgment and it is, therefore, affirmed.