## James, et al. v. Davis, et al.

(Decided November 24, 1916.)

### Appeal from Pike Circuit Court.

Evidence—Documents—Writings—Admissibility as Evidence. — A document, which appears to be as much as thirty years of age, and is unblemished by alterations and otherwise free from suspicion of a want of genuineness, and which is found in the proper custody, is admissible, as evidence, in support of an ownership of land, without direct proof of its execution, but, when admitted, its weight as evidence is then a matter for the determination of the court or jury, whose province it is to determine the facts at issue.

B. M. JAMES and STRATTON & STEPHENSON for appellants.

ROSCOE VANOVER for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellants are the children and grandchildren of Hawkens Jackson, who died twelve or thirteen years ago. On August 9th, 1848, a patent was granted to Hawkens Jackson for one hundred acres of land on the Trace Fork of the Left Hand Fork of Brushy Creek, in Pike county. On the 13th day of April, 1912, the appellants instituted this action in the Pike circuit court for the recovery of the tract of land, which had been granted to their ancestor, against the appellee, Sam M. Davis, who they alleged was unlawfully in the possession of it and withholding it from them, and sought the recovery of the possession of the land from him, as well as to recover of

him the sum of five hundred dollars, the value of the timber trees, which they alleged he had cut from the land and appropriated to his own use, and the further sum of two hundred and fifty dollars, which they alleged he had damaged the land by cutting other timber trees from it. The appellee, Sam M. Davis, denied the ownership or right of possession of the land by the appellants and alleged that his wife, Ida Bell Davis, was the owner of the land, and that she, and those under whom she claimed, had been in the adverse possession of the land for more than thirty years, before the action was filed, and relied upon the fifteen-year statute of limitations and upon the thirty-year statute of limitations, in bar of the appellant's cause of action. The appellants denied that the land was owned by Ida Bell Davis, or that she, or those under whom she claimed, had been in the adverse possession of it for either fifteen years or thirty years. The appellants, also, filed an amended petition making Ida Bell Davis a party defendant to the suit. Thereafter, the appellees, Sam Davis and Ida Bell Davis, his wife, filed an amended answer, in which, they alleged, that Hawkens Jackson had sold this land to John M. Davis, in consideration of one yellow mare and thirty-five dollars in money and had executed and delivered to John M. Davis a writing, in which the terms of the sale were set out and in which he obligated himself to execute and deliver to John M. Davis a deed to the land, and that the writing was dated on the 21st day of September, 1849. At such date, they alleged that Hawkens Jackson delivered the possession of the land to John M. Davis, and that he and those claiming under him, including these appellees, had been in the actual, open, hostile and adverse possession of the land, claiming it as their own, from that time until the bringing of the suit, a period of more than sixty-two years. The averments of the amended answer were denied by a reply, and it was further alleged that the writing, by which it was claimed, that Hawkens Jackson had sold the land to John M. Davis, was a forgery. The appellees, also, filed a deed from John M. Davis to appellee, Sam M. Davis, dated the 8th day of July, 1885, and a deed from Sam M. Davis to the appellee, Ida Bell Davis, dated the 3rd day of January, 1896, both of which deeds were recorded very shortly after their execution and presumably embrace and convey the lands in controversy from John M. Davis

to appellee, Sam Davis; and from him to the appellee, Ida Bell Davis.

The suit was originally brought at law, but by agreement of parties it was transferred to the equity side of the court's docket and proof was taken by depositions and in all respects it was conducted and tried as an equitable action. The court below adjudged that the writing relied upon as the evidence of a sale of the land by Hawkens Jackson to John M. Davis and of date of September 23rd, 1849, had never been executed by Hawkens Jackson and was invalid, but it further adjudged, that the appellees had manifested a title to the lands by an adverse holding of it, by them, and those under whom they claimed, for the statutory period necessary to vest title in the occupants, and dismissed the petition. From this judgment the heirs of Hawkens Jackson prayed an appeal to this court.

(1) It is insisted by the appellants, that the appellee, Sam M. Davis, is not a competent witness and should not have been permitted to testify, and that the evidence given by him should not now be considered. This contention is based upon the fact that both he and his wife, Ida Bell Davis, are parties to this action, and that she is claiming to be the owner of the land, which is sought to be recovered by the action. Exceptions were not filed to the deposition of Sam M. Davis, and the trial court did not pass upon the question of his competency as a witness. The deposition of Ida Bell Davis was not taken. Section 606, subsection 1, of the Civil Code, provides, that in actions, which might have been brought by or against a wife, if she was unmarried, either the husband or wife may testify, but, not both of them may testify. In such cases the wife, when she is the real party in interest in the suit, may elect to testify herself or to have her husband testify for her, but both of them may not testify. As the claimant and in possession of the land in controversy, she could have been sued for the recovery of the possession of the lands, if she was an unmarried woman; and if she was an unmarried woman she could maintain an action for their recovery, if ejected from the possession. Hence, her husband was a competent witness for her, she not having testified. Taylor, Jr., & Sons v. Johnson, 30 R. 656; Wise v. Foote, 81 Ky. 10; Howard v. Tenney, 87 Ky. 52; Glover & Durrett v. Suter, 18 R. 1018.

(2) The testimony relating to the claim, of appellees, to having the lands in their adverse possession for fifteen years and for thirty years, before the institution of the suit, for their recovery, is meager and not very satisfactory. It is apparent that the court could have been much more enlightened as to the true state of the facts if the parties had have been zealous to have done so. The contention of appellee is, that Hawkens Jackson, the patentee of the land and who died in 1904, 1905 or 1906, sold the land on the 21st day of September, 1849, to John M. Davis, the father of appellee, Sam M. Davis, in consideration of one yellow mare and a promissory note for thirty-five dollars. In the answer it is alleged that this sale was by parol, and that John M. Davis took possession of the land and held possession of it from the date of the sale of it to him until 1885, when he, by deed, conveyed it to appellee, Sam M. Davis. The appellee, Sam M. Davis, held it in possession from that time until 1896, when he, by deed, sold and conveyed it to the appellee, Ida Bell Davis, who has held it in possession since that time. This, if true, is a continuous possession of the land by Ida Bell Davis and those under whom she claims the title to the land for a period of time, exceeding sixty-two years before the filing of the action by the appellants for its recovery. The description of the land, as to lines and objects called for, in the deed from John M. Davis to Sam M. Davis, and the description of the land patented to Hawkens Jackson cannot be recognized as the same tract of land from the mere reading of the descriptions in the patent and deed, and the description, as given, of the lands conveyed by Sam M. Davis to Ida Bell Davis, in the deed, which he executed to her, is not similar to the description given of the lands, which are embraced in the patent to Jackson and the deed from John M. Davis to Sam M. Davis. While, the descriptions given in the two deeds may be different descriptions of the lands sued for and the same tract of land as that described in the patent to Jackson, but such a conclusion cannot be arrived at by a mere reading of the title papers. However, the appellants alleged in their pleadings that the appellees are in the possession of the lands described in the patent and the appellees admit the possession of the lands, and Sam M. Davis states not very clearly, that the lands described in the patent are embraced in the two deeds, but this has to be inferred

from other facts, which he does state, rather than from any direct statement to that effect. The appellants seem to tacitly admit that the deeds embrace the lands sued for. As to whether the deeds embrace other lands than the land patented to Jackson, the parties, upon both sides, are silent. John M. Davis has been dead for eighteen or twenty years. Sam M. Davis states in his deposition, in chief, that he and his wife have been residing upon the lands sued for for twenty-two years; that the land has a well marked boundary, which was made around it about thirty-three years ago; that he has lived within that marked boundary for about twenty-two years; that about two acres of the land has been under fence and cultivated by his father and himself every year for probably forty years, and an orchard has been upon it for twenty-one years past; that his father always claimed to own the land and he has since it was conveyed to him, and his wife has claimed ownership of it since it was conveyed to her. The statement made by him with reference to two or three acres of it having been under fence and in cultivation, and that an orchard had been planted upon it, is, however, based upon the assumption that the appellants are correct in their claim, as to the proper location of the land, which was granted to Jackson by the patent, but that he does not know whether the location of the lands embraced in the patent to Jackson has been correctly located by the appellants or not. He testifies to having seen Stony Amyx and others surveying the lands sued for, but it does not appear at whose instance Amyx and his associates were surveying the land, but from the fact that the appellees were not directing the survey, it is presumed that the surveying was done at the instance of the appellants, and for some reason, they have failed to indicate by proof the result of the survey or as to whether or not the survey showed appellee, Davis, to have made correct statements in regard to the location of his dwelling, cleared lands, and other things, about which he gave testimony, with reference to the location of the Jackson patent. In a deposition in rebuttal, the appellee, Sam M. Davis, makes the statement that he does not know whether he resides upon the lands sued for or not, but from the other statements made, we conclude that he meant by this statement, that he did not know whether the location of the Jackson patent, claimed by appellants, was a correct

location or not, and that he did not intend to make any
change in his statement, that if the patent was located,
as claimed, that he was residing upon it and had been
for twenty-two years last past. One of the appellants
and a witness who resides in another county, at a dis-
tance from the land testified that they were acquainted
with the lands, and that seven or eight years ago there
was no improved or inclosed lands upon the land sued
for, and that the enclosure of a portion of the land was
done not more than two years ago, and that appellee,
instead of residing upon the tract, resided from three
hundred to four hundred yards from it, but neither of
them made any statement to the effect, that there had
ever been a survey of the land made, nor how, or in
what way, they had obtained their knowledge, as to the
location of the land. Aged men in the neighborhood
testified to the effect, that John M. Davis claimed to own
the land for many years past, until it was conveyed to
Sam M. Davis, who had claimed the ownership of it since
that time, and that about thirty years ago, one or the
other of the Davises cut and removed the timber trees
from the lands and sold them. The appellees, however,
claim that at the time that Jackson sold the land to John
M. Davis, he executed and delivered him a writing as a
memorial of the transaction, and by which he agreed to
convey the land to John M. Davis, by a good and suf-
ficient title, and they file with the deposition of Sam M.
Davis such a writing, which the appellees claim was
found by Sam M. Davis among a quantity of old papers
pertaining to land titles, which had been in the posses-
sion of John M. Davis during his lifetime. The writing
was first discovered seven or eight years ago. It bears
the date of September 21st, 1849, and purported to evi-
dence a sale by Hawkens Jackson to John M. Davis of
the land sued for in this action. It was signed by the
name of Hawkens Jackson and attested by two witnesses,
Steven Robnit and Moses Colensworth. The proof shows
that Colensworth has been dead twenty or thirty years
and that Robnit has been dead for ten or more years.
Hence, there was no person now living, who, more than
sixty-two years before the bringing of this suit, could
testify with regard to the execution and delivery of this
paper. If this paper was the act of Hawkens Jackson,
it is evident that the appellants must fail in their suit,
as neither Hawkins Jackson, nor his heirs, could be heard

to claim the land, after he had sold it for a valuable consideration and obligated himself to convey it to his vendee. The appellants insist that the paper, in question, is a forgery, and the circuit court arrived at the conclusion, that it was not genuine, although it held that appellees had a good title to the lands sued for by adverse possession. The paper, in question, was set up by the appellees in an amended answer, while in the answer it was alleged that the sale by Jackson to John M. Davis was by parol, but this is explained to have occurred from the fact that appellees were not present when the original answer was prepared, and that their attorney had not been advised of all of the facts of the case. The appellants, in attempting to avoid the force of the writing, which is called a bond for title, introduced witnesses, who proved that paper sacks and pokes, such as are used by merchants to enclose their goods when sold, were not in use as far back as the date of this writing, but they did not undertake to prove that the writing is upon paper of the character of which these sacks or pokes are made, and rely only upon an assertion to that effect in their briefs. It is, furthermore, insisted that an inspection of the writing will show that it is all in the same handwriting, including the names of the attesting witnesses, and that the writing was done with a steel pen, and at the date of its supposed execution such pens were not in use. There is, however, no evidence of any person, who pretends to know the difference between the writing with a steel pen and that done with a pen made from a goose quill, in the record. Two witnesses, also, testify, who claimed to have been acquainted with Hawkens Jackson, and that he subscribed his name H. F. Jackson. One witness, also, testifies that before the bringing of this suit, that the appellee, Sam M. Davis, stated in his presence or to him that he had no writing of any kind by Hawkens Jackson, with regard to the land sued for, and that his father, John M. Davis, had none, but this statement is very positively denied by Davis. Other witnesses testify, that previous to the Civil War and about the time of the beginning of the Civil War, Hawkens Jackson owned a yellow mare, which it was said that he had received as consideration for the sale of the land to John M. Davis. Other witnesses testified to his ownership of a yellow mare, but stated that it was their information that he purchased her from

one Adams. The original paper relied on by the appel-
lees as evidencing the sale of the land to John M. Davis
is with the record, and an inspection of it fails to con-
vince us of a want of its genuineness. The body of the
writing and the names of the subscribing witnesses, one
of whom signs by mark, appear to be the handwriting
of the attesting witness, Robnit, but it cannot be said that
the signature, Hawkens Jackson, is done by the same
hand. The paper and the writing show that it has all
the appearances of being very aged, and seems to have
been written upon paper, which was not designed for
writing purposes, but of what particular class of paper
or for what purpose it may have been used, does not
appear. The paper states that the consideration for the
sale of the land is a yellow mare and a note for thirty-
five dollars. Nothing appears about the paper which
could be relied upon as an evidence that it was not exe-
cuted at the time it purports to be. Truly, one of the
appellants, who was a grandson of Hawkens Jackson,
stated that the signature is not in the handwriting of
his grandfather. This statement would have been more
convincing, however, if this witness had have shown a
degree of acquaintance with the handwriting of Hawkens
Jackson fifty or sixty years ago, when he was a young
man, or if specimens of his writing at that time had been
produced to have added weight to the mere opinion of
the witness, which does not seem to have been founded
upon sufficient facts to make it convincing, as this witness
was only twelve or thirteen years of age, at the death
of Hawkens Jackson. There are many things in the
record, which tend strongly to prove that Hawkens Jack-
son had parted with his title to this land many years
before his death. He lived from fifty-six to fifty-seven
years after the date of the writing and in the neighbor-
hood of where the land sued for is situated. There is no
evidence of his ever asserting any authority or acts of
ownership over the land, nor did he ever claim to own
it, although a witness says that shortly before his death
he was heard to say, that he ought to own some land. He
was in the neighborhood, when the Davises spent an en-
tire winter felling and removing the timber trees from
the land and disposing of them, to which Jackson never,
at any time, made any objection, and it is fairly reason-
able to presume, that on account of his proximity to
where the work was going on, that he must necessarily

have known it. His brother, upon whose lands he lived for the last fifteen years of his life, testified that he never heard of any claim of ownership that Hawkens Jackson made to this land. It is proven and not denied, that before the justices of the fiscal court of the county, that Jackson testified under oath, between 1880 and 1890, that he was not the owner of any land at all. It is not shown, that in the half century, from the date of the writing until his death, that he ever listed or paid taxes upon the land, while it appears that John M. Davis did do so. From these circumstances we are convinced, that he had sold this land and parted with his title to it a great many years previous to his death.

Such a writing as the one, in question, is admitted as evidence, in support of title, without direct proof of its execution, if it is found in the proper custody, is unblemished by alterations and otherwise free from suspicion, and appears to be as much as thirty years of age. Bugin v. Chenault, 9 B. M. 285; Harlin, etc. v. Howard, etc., 79 Ky. 373; Boyd v. Bethel, 10 R. 470; Thruston v. Masterson, 9 Dana 233; Winston v. Gwathmey's Heirs, etc., 8 B. M. 20; Cook's Heirs v. Totten's Heirs, 6 Dana 109; Bennett v. Runyon, 4 Dana 422; Taylor v. Cox, 2 B. M. 429; Davidson v. Morrison, 86 Ky. 397; Thompson v. L. & N. R. R. Co., 110 Ky. 973. After the admission of such a document, as evidence, its weight is then a matter for the tribunal, whose duty it is to determine the facts at issue. In the instant case, the writing came from the custody, wherein it would naturally be supposed to be—in a bundle of old papers, which John M. Davis had, in his lifetime, in his custody, and relating to lands owned by him. It is not blemished by alterations and there is nothing about it to excite suspicion of its want of genuineness, and appears to be as old as it purports to be. John M. Davis had held the land in possession under the writing. Taking into consideration the extraneous facts in proof, which go to support the existence of such a document, there does not seem to be any convincing reason for holding that it is not the act of Hawkens Jackson.

The judgment is therefore affirmed.