## Russell, et al. v. Tipton, et al.

(Decided December 16, 1921.)

## Appeal from Estill Circuit Court.

1. Evidence—Documentary Evidence—Ancient Documents.—A title bond is admissible in evidence without direct proof of its execution, where it is found in the possession of the husband of the deceased purchaser, is apparently more than thirty years old, is unblemished by alterations, and otherwise free from suspicion.

2. Contracts—Bond for Title—Sufficiency of Evidence to Show Bond Was Not Executed.—In an action involving the execution of a title bond, evidence insufficient to show that the bond was not executed.

3. Frauds, Statute of—Description of Land—Executed Contract.—A written contract to convey "a piece of land in Estill county, on Cow creek, supposed to be twenty-five acres more or less, bounded as follows, to-wit: Beginning at the limestone cliff thence with his line across the hollow to the cliff on the other side, thence with the cliff around to the beginning," sufficiently describes the property, where the contract was executed by the purchaser's taking possession and holding it with the vendor's acquiescense.

4. Curtesy—Husband's Rights in Wife's Land Acquired in 1872 and Held Under Executory Contract Until Her Death in 1887.—Where property was acquired by the wife in 1872, and she and her husband continued in possession thereof until her death in 1887, and there was issue of the marriage born alive, the husband, under the statute then in force, was entitled to a life estate in the entire property, and this is true even though the wife held the land under an executory contract.

5. Vendor and Purchaser—Bona Fide Purchaser.—A vendor can, as against third persons having a superior title, convey only such

rights as he in fact has, and the purchaser takes subject to the rights of such third persons.

6. Life Estates—Adverse Possession by or Under Life Tenant—Remaindermen.—Neither the possession of a life tenant, nor the possession of one claiming through him, can become adverse to the remaindermen during the life of the life tenant, unless he brings home to the remaindermen, by clear and convincing evidence, notice of his intention to set up title in himself as against the remaindermen.

7. Life Estates—Validity of Oil Lease Executed by Life Tenant.—A life tenant cannot execute a valid oil lease on the property.

8. Waste—Injunction—Remaindermen May Enjoin Lessee in Oil Lease Executed by Life Tenant From Committing Waste.—A remainderman may enjoin the lessee in an oil lease executed by the life tenant from committing waste.

RIDDELL & SHUMATE for appellants.

MILLER & CHAPMAN, ED. C. O'REAR and WM. L. WALLACE for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Paul Tipton was the owner of a twenty-five acre tract of land located on Rock House fork of Cow creek in Estill county. It appears that on November 28, 1872, Paul Tipton and his wife, Louisey Tipton, executed to their daughter, Delphy Russell, wife of Noah B. Russell, the following contract or bond for title:

"Nov. 28, 1872.

"This agreement entered into between Paul Tipton and Louisey Tipton, party of the first part, and Delphy Russell, of the second part, of the part have this day granted, bargained and sold to her of the second part, a piece of land in Estill county, on Cow creek, supposed to be twenty-five acres, more or less, for the sum of twenty-five dollars, twenty-five dollars down and fifty dollars in twelve months from the date, and then the party of the first part is to make the party of the second part a good warranted deed. Bounded as follows, to-wit: Beginning at the limestone cliff, thence with his line across the hollow to the cliff on the other side, thence with the cliff around to the beginning.

"Witnesses: Aron Fletcher,     Paul Tipton,
           Jake Tipton,        Louisey Tipton."

Delphy Russell died in the year 1887, leaving surviving her her husband and several children. On August

18, 1900, Noah Russell, the former husband of Delphy Russell, and his then wife, Ellen Russell, conveyed the land to George Moses. On August 31, 1905, Moses and wife conveyed the land to Samuel Tipton. On April 21, 1915, Samuel Tipton and wife executed to G. E. Turpin an oil and gas lease, which Turpin transferred to the Wood Oil Company.

John Russell, claiming to be the owner of five-sevenths of the land, and Sarah Risen and Noah Simpson Russell, claiming to be the owners of the other two-sevenths, subject to the life estate of their father, Noah B. Russell, brought this suit against Samuel Tipton, G. E. Turpin and the Wood Oil Company to cancel the lease and to enjoin the defendants from committing waste by taking the oil and gas from the land. The defendant, Samuel Tipton, denied the ownership of plaintiffs, and pleaded title in himself, both of record and by adverse possession. On final hearing the petition was dismissed and plaintiffs appeal.

The evidence for plaintiffs is as follows: Jeptha Tipton, the nephew of Paul Tipton, the original owner of the land, testified that he bought the land once from Noah Russell. He went to see his uncle Paul about it, and his uncle Paul said he could not make him a deed, that it was not according to the contract. He further stated that the deed was to be made to Delphy and her heirs. In another connection witness stated that his Uncle Paul said that the deed was to be made to Delphy and her husband. At that time Delphy Russell was dead, and Noah Russell was living on the land. Martha J. Tipton, daughter-in-law of Paul Tipton, testified that she was at the home of Paul Tipton in the fall of 1900. She heard Paul Tipton tell John Russell to bring a clerk over and let him make a deed in his lifetime. She also testified as follows: "I heard him say that he sold it to him but the deed was to be made to their daughter and her heirs." On cross-examination witness stated that Paul Tipton said that the land was sold to Noah Russell and wife, but that the deed was to be made to Delphy and her heirs. She heard this both before and after the death of Delphy Russell. Mary B. Wise testified that she heard Paul Tipton say that he had sold the land "to Delphy Russell and her children." She supposed that Paul Tipton knew at the time he made the remark that Noah Russell had sold the land to Joseph. Rankin R. Tipton, a son of Paul Tipton, testified that he heard his father say several

times that he had sold the land to Delphy and her children. He also heard his father tell John he would not last long and he ought to bring a notary public there to make a deed to the place. Plaintiff, John Russell, testified that he was forty-two years of age. He found the title bond above set forth at his father's, about a year before he testified. He had always heard that there was such a paper. At one time he rented the land. At that time he was claiming the land but could not get hold of the title. Soon after his father moved away, Moses moved on. The land had been occupied since that time, but not continuously. The land was enclosed by fence. He knew that the land was changing hands and sold at different times, but did not do anything about it because he could not show his title. When he first inquired of his father about the title bond, his father said he did not know whether he could find it or not. The last time he went to see him, his father found it. Weedon Tipton, son of Paul and Louisey Tipton, testified that he saw the bond from Paul Tipton and wife to Delphy Russell when they were transacting the big business, but could not tell anything about it. They were drawing the paper up to let Delphy have the piece of land. The reason he was interested in it was because he got a piece at the same time. They were all talking about it and his mother was putting in like fire and said that the deed would have to be made to Delphy or she would not sign it. On cross-examination he said he did not know to whom the land was sold, but guessed that they were both interested in it. He saw the writing in the bond but did not know to whom the bond was made. All he knew about it was what the people said at the time. John Reffett testified that on one occasion he tried to buy the land from Noah Russell. He went to Uncle Paul and asked him if he would make a deed for it. Uncle Paul said Noah had no right to sell it, that it belonged to Delphy and her heirs. Noah B. Russell, former husband of Delphy Russell, testified that he was seventy-five years of age. Paul Tipton and Louisey Tipton sold to his wife twenty-five acres of land. Old man Tipton and wife gave his wife a bond for the land. After the bond was executed they built a house on the place and moved on it. He and his wife had possession of it at the time of her death. He bought another piece of land adjoining, and built a house on the last piece. He sold the land, with his other lands, to Simpson Moses and George Moses. No deed was ever made to him or his wife for

the land, but he deeded it to George Moses and Simpson Moses. At the time he sold to Moses, he told him that the land in the hollow belonged to his wife, and he could not make a deed to that.

The evidence for the defendants is as follows: Nelson Tipton, nephew of Paul Tipton, stated that on one occasion Paul Tipton stayed at his house for four or five days, and while there, stated that he had sold the land to Noah Russell for $25.00, and Noah had paid him $10.00 down. Noah Russell also told him that he had bought the land from Paul Tipton. E. L. Baker, brother-in-law of Noah Russell, testified that he heard Uncle Paul Tipton say that he had sold Noah Russell the land at the head of the hollow. He also heard his wife make the same remark. Defendant, Samuel Tipton, testified that he had owned the land for twelve years and bought it from George Moses and wife. George Moses bought the land from Noah Russell. He had never seen any evidence of title from Paul Tipton to Noah Russell. When George Moses bought the land he took possession of it. Since he had had the land he had farmed it. At one time he rented the land to plaintiff, John Russell. On cross-examination he stated that after Delphy and Noah were married, they lived on the tract for a while. At the time he testified there were two producing oil wells on the land. Simp Tipton testified that he was present when Noah Russell bought the land. He heard Uncle Paul say, "Noah, I have just concluded to sell you this land," and Noah said, "All right, pap, I will buy it." The price was $25.00, and when $15.00 was paid, a deed was to be made. When this was done there were present Paul Tipton, Louisey Tipton, Noah Russell, Delphy Russell, Simp Tipton and perhaps Weeden or Jake. Sam Ginter did the writing. At that time Noah Russell paid $10.00 in script and money. After that time he never knew of Paul Tipton's attempting to execute a bond to Delphy, but his wife did. On cross-examination he said that the old lady said she was going to sign a bond to Delphy so Noah couldn't sell it. At that time he could not read the paper, but that is what they said. After the bond was written and signed by Louisey, she said she was going to give Delphy a bond so Noah couldn't sell it. Louis Tipton, a cousin of the defendant, testified that Paul Tipton told him he had sold the land to Noah, but did not like the fact that Noah had sold it to the peddlers. This occurred about a year before Paul Tipton died.

Delphy Russell took possession under the title bond and continued to hold the land for several years. When offered in evidence the bond was apparently more than thirty years old. It was found in the possession of Noah Russell, who was the husband of the purchaser, and therefore the proper custodian, and being unblemished by alterations and otherwise free from suspicion, it was admissible without direct proof of execution. Everidge v. Martin, 164 Ky. 497, 175 S. W. 1004; James v. Davis, 172 Ky. 381, 189 S. W. 440. That being true, it remains to determine whether the oral evidence is sufficient to show that the bond was not executed. Two witnesses give their recollection of what took place when the bond was executed. One claims that the bond was executed to Noah, while the other claims it was executed to Delphy. However, neither of these witnesses claims to have read the bond, but merely states its legal effect as gathered from the conversation which occurred at the time. The other evidence consists of statements made by Paul Tipton, either to the effect that he had sold the land to Noah or had sold it to Delphy. We are not disposed to put much credence in the testimony of witnesses who merely state the legal effect of an instrument, gathered from conversations which they heard more than forty years ago, but even if we assume that each is accurate in his recollection, then the testimony of one offsets the testimony of the other. Moreover, the testimony to the effect that Paul sold to Noah is not necessarily inconsistent with the fact that the title bond was made to Delphy. As a matter of fact, Paul may have made the trade with Noah, and Noah may have paid the purchase money, but the parties may have requested him to execute the title bond to Delphy. We therefore conclude that the evidence is not sufficient to show that the title bond in question was not executed.

But it is insisted that the description in the title bond is too vague and indefinite. Whether the description would be regarded as sufficient if the contract had remained executory, it is unnecessary to decide. Here the contract was executed by the vendee's taking possession under the contract and holding the land with the acquiescence of the vendor. That being true, the subject matter of the contract was made certain by the acts of the parties, and the contract is not void because the description was not sufficient. Overstreet v. Rice, 4 Bush 1, 96

Am. Dec. 279; Ferguson v. Cabell, 141 Ky. 499, 133 S. W. 539.

The bond being valid, it follows that, on the death of Delphy, such title as she had passes to her children, subject to the curtesy rights of her husband.

The property was acquired in 1872. Possession was then taken by Delphy and her husband, and their possession continued until her death in 1887. There being issue of the marriage born alive, the husband, under the statute then in force, was entitled to a life estate in the entire property, and this is true even though the wife held the land under an executory contract. Brewer v. VanArsdale, 6 Dana 204; Stevens v. Smith, 4 J. J. M. 64; Bailey v. Duncan, 4 Mon. 256. It is well settled that a vendor can, as against third persons having a superior title, convey only such rights as he in fact has, and the purchaser takes subject to the rights of such third persons. 27 R. C. L., p. 668. That being true, only Noah Russell's life estate in the property passed by his deed to Moses, and by Moses' deed to Samuel Tipton.

Neither the possession of the life tenant, nor the possession of one claiming through him, can become adverse to the remaindermen during the life of the life tenant, unless he brings home to the remaindermen, by clear and convincing evidence, notice of his intention to set up title in himself as against the remaindermen. Bates v. Adams, 182 Ky. 100, 206 S. W. 163; Phillips v. Williamson, 184 Ky. 396, 212 S. W. 121; and there is no showing in this case that such notice, if any, was brought home to the remaindermen fifteen years before suit was brought. That being true, plaintiff's right of action was not barred by limitation or lost by laches.

As Samuel Tipton owns only a life estate in the property, he could not execute a valid oil lease thereon, and as plaintiffs own the remainder, they are entitled to have the lessees enjoined from committing waste on the property.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.