## Lake et al. v. Ford et al.

(Decided June 24, 1932.)

804

BARNES & SMITH for appellants.

GILMORE KEOWN for appellees.

Opinion of the Court by Judge Clay—Reversing.

William Lake, Lucinda Taylor, Mary Lois Greer, C. F. Lake, Esther Whitaker, Ada Greer, Jno. W. Lake, and Arminta Roberts, eight of the children of Jno. B. Lake, deceased, brought this suit against Bertie Ford, who had acquired title from Olden Lake, the other child of Jno. B. Lake, to recover an eight-ninths undivided interest in and to a 50-acre tract of land located in Ohio county on the waters of South Panther creek. A trial before a jury resulted in a verdict and judgment for defendants. Plaintiffs have appealed.

The facts are these: For some time prior to his death, John B. Lake and his wife, Mary Lake, together with their children, had lived on the land in controversy. John B. Lake died intestate on August 27, 1887, survived by his wife, Mary, and the nine children named above. After his death the widow and children lived together on the land until the children married and reached their majority and moved away. Thereafter some of the children would come and live with her, but only for a short time. About the year 1910 she persuaded her youngest son, Olden Lake, to move on the farm for the purpose of

taking care of her in her old age. In the month of March, 1911, she conveyed the farm to Olden in consideration of his keeping and supporting her until her death, and died about six weeks later. Olden took possession under his deed, but the deed was not recorded until October, 1919. In the month of August, 1921, Olden conveyed the land to Jeff Hodges, who thereafter sold it to appellee Bertie Ford.

1. Appellants, who claimed title through their father, first insist that the evidence which they introduced showed that he had acquired title by adverse possession before his death. Several witnesses of advanced age testified on the question of adverse possession. One of them deposed that he was present about the year 1870 when John B. Lake purchased the land from Edgar Miles, and he and other witnesses testified that John B. Lake took possession of the land more than 15 years before his death and continued to occupy and cultivate it until his death. However, when the witnesses were cross-examined as to the time when John B. Lake took possession of the farm, which they had testified in chief occurred about 58 years before they took the witness stand, they exhibited some confusion as to the date, as well as to the dates of other occurrences called to their attention for the purpose of testing their memories, and the most that can be said is that their evidence was sufficient to make the question of adverse possession one for the jury, and not such as to authorize a peremptory instruction or render the verdict flagrantly against the evidence.

2. Instruction 2 given by the court is as follows:

"The court instructs the jury that if they believe from the evidence that the plaintiff's father, John B. Lake, had the actual adverse possession of the tract of land sued for continuously and uninterruptedly to a well marked and defined boundary for 15 years or more before August 27, 1887, claiming the same openly and notoriously as his own adversely to all others, then and in that event the jury should find for the plaintiff the lot or tract of land sued for. And the court instructs the jury that if they should believe from the evidence that the plaintiffs or their father, John B. Lake, had said lot under enclosure and claiming said land as his own then he

was in actual adverse possession of said lot in the meaning of the instruction."

The instruction is attacked on the ground that it required an adverse holding both to "a well marked and defined boundary", and also by inclosure for a period of 15 years, whereas either method was sufficient under the law. It was not shown that John B. Lake took possession under a deed or other instrument describing the land, or that there was a marked boundary around the land. In the circumstances the only way of showing that he claimed to a well-marked and defined boundary was to show that the land was inclosed, and all the evidence was directed to that point. That being true, it is clear that the trial court added the concluding paragraph of the instruction for the purpose of letting the jury know that if John Lake had the lot under inclosure, and claimed it as his own, it was equivalent to a holding "to a well marked and defined boundary", and therefore sufficient. Hobson, Blaine and Caldwell on Instructions, sec. 57; Louisville & N. R. Co. v. Rayl, 107 S. W. 298, 32 Ky. Law Rep. 870. There is, however, a mistake in the concluding sentence of the instruction, in that it uses the words "the plaintiffs or their father, John B. Lake", instead of the words "plaintiff's father, John B. Lake"; it not being shown or contended that plaintiffs had adverse possession of the land prior to the death of their father. We may also add that instruction (b), which is the converse of instruction (a), also contains the same mistake.

3. Instruction (c) submitted the question of adverse possession by Mary Lake for a period of 15 years or more before April 28, 1911, the date of her death. By this instruction the jury were authorized to base a verdict for appellee on Mary Lake's adverse possession, even though the jury believed from the evidence that her husband, John B. Lake, had acquired title by adverse possession prior to his death. As neither dower nor homestead was assigned, the widow's subsequent occupancy of the land, which was worth less than $1,000, will be treated as an election by her to hold the land as a homestead. Smith v. Richey, 185 Ky. 516, 215 S. W. 429. In the circumstances her relation was that of a life tenant, and no rule is better settled than that the possession of the life tenant cannot become adverse to the remaindermen unless he brings home to the remaindermen

by clear and convincing evidence notice of his intention to set up title in himself as against the remaindermen. Russell v. Tipton, 193 Ky. 305, 235 S. W. 763. All that the evidence in this case shows is that Mary Lake claimed the land and sold certain timber therefrom, and that during the greater portion of this time she and some of the children were living on the land. Clearly this was not sufficient to show that her occupance, which was amicable to her husband's children, had become adverse. Smith v. Richey, supra. On the other hand, if John B. Lake had not acquired title, the subsequent occupancy of the land by the widow together with her children was not adverse to them during that period, or even thereafter when she occupied the land alone, unless she brought home to them notice of her adverse holding which the evidence fails to show that she did. We therefore conclude that no instruction on adverse possession by the widow should have been given.

4. But appellants insist that the court should have given an instruction that would have permitted them to tack their possession to that of their father. Doubtless they would have been entitled to such an instruction if the contest were between appellants and some third party not claiming through the widow, but the question presented is whether they could tack their possession to that of the father as against the widow, who also claimed the land. We think not for the reason that during the time they lived on the farm they occupied it jointly with the widow, and their possession was never adverse or exclusive.

5. It is also insisted that the court should not have given an instruction on adverse possession by Bertie Ford and his predecessors in title, including Olden Lake. This position is predicated on the ground that the deed from Mrs. Lake to her son Olden was never put to record. It must not be overlooked that Mrs. Lake, a few weeks before her death, conveyed the entire tract to Olden, and that upon his mother's death he took exclusive possession of the land and continued in possession until he sold to Hodges. There is evidence to the effect that on their mother's death the other children raised a "big fuss" when they learned that their mother had conveyed the land to Olden, and it is hardly probable that appellants, who were then entitled to the joint use and possession of the property, were not apprised of the con-

veyance, and of the adverse claim and holding of Olden, who took exclusive possession of the land. At any rate, the evidence of Olden's adverse claim and holding, and of appellant's notice thereof, was clearly sufficient to take the case to the jury. But there is the further claim that Olden's holding was not continuous, as he testified that he left the state for a while and abandoned the land. In reply to this contention it is sufficient to say that there was evidence that during his absence he left the land in possession of a tenant, or agent, and it cannot be said as a matter of law that there was a break in his possession.

6. There is a vigorous attack on instruction (g), telling the jury in substance that notice or knowledge of the adverse holding and use of the property by Mary Lake or Olden Lake to one or more of the plaintiffs, who were then 20 years of age, was notice to all of the plaintiffs. It is the rule that where a right of entry descends to heirs, some of whom are under disability, and some are not, the statute of limitations runs against all. Henderson v. Fielder, 185 Ky. 482, 215 S. W. 187; Quarels v. Bradshaw, 200 Ky. 475, 255 S. W. 124. But, as explained in the case of Wilcox v. Sams, 213 Ky. 696, 281 S. W. 832, this rule grows out of the interpretation of section 2506, Ky. Stats., relating to the suspension of limitation by disability, and as it does not deal with the question of notice of adverse possession, we are not disposed to hold that notice of adverse possession to one joint tenant is notice to all, though some are under disability at the time the right of action descended. We therefore conclude that instruction (g) should not have been given. However, inasmuch as the notice may be actual or constructive, that is, such as may be inferred or imputed from the acts and conduct of the one in actual possession, Wilcox v. Sams, supra, it is at once apparent that such acts and conduct as are sufficient to impute notice to one joint tenant are sufficient to impute notice to all, thus imposing on those claiming not to have had notice the burden of showing that fact.

7. Complaint is made of the exclusion of evidence of Ruey Taylor, husband of appellant Lucinda Taylor, to the effect that about the time Hodges conveyed to Bertie Ford he told Ford that he better have the title examined as witness did not think the title was good, or that Mrs. Lake had any right to convey; and that Mrs. Lake told him a short while before she died that she never

claimed the land in controversy, knew that she had no right to deed it to Olden Lake, that all her children owned the land, and she wanted all of them to have their interest in it. As Ford asserted title by adverse possession, and not as an innocent purchaser for value, what the witness said about the title not being good, and Mrs. Lake not having any right to the land, was wholly immaterial, and its exclusion was not prejudicial error. As to the conversation between witness and Mrs. Lake, who was then dead, we need go no further than to say that the statements attributed to Mrs. Lake were material only in so far as they tended to show that she was not claiming or holding the land adversely to her children, and the question of her adverse possession having been eliminated from the case, we conclude that appellants were not prejudiced by the exclusion of the evidence.

8. On another trial the court will instruct the jury as follows:

"(a) If you believe from the evidence that plaintiff's father, John B. Lake, was for a period of 15 years or more before August 27, 1887, in the actual, open, notorious, continuous, adverse, and peaceable possession of the land in controversy, and that during such period he had said land enclosed by a fence and claimed same as his own to the full extent of the boundary, you will find for plaintiffs. Unless you so believe, you will find for the defendants."

"(b) Although you may believe as Instruction (a) yet if you further believe from the evidence that Bertie Ford and his predecessors in title, Jeff Hodges and Olden Lake, were for a period of 15 years or more before October 15, 1927, in the actual, open, notorious, continuous, adverse and peaceable possession of the land, claiming the same openly and notoriously as their own, and adversely to all others, and that plaintiffs or some of them had notice of such adverse claim and holding, you will find for the defendants, as against such of the plaintiffs as you may believe from the evidence had such notice."

"(c) Notice of adverse claim and holding within the meaning of Instruction (b) may be actual or constructive. It was actual if those in possession expressly declared to the plaintiffs that they were claiming the whole of the land. It was constructive

if those in possession possessed, controlled and used the land in such an exclusive and notorious manner as to apprise a reasonably prudent person that they were denying the right of plaintiffs to any share in the land.''

Judgment reversed, and cause remanded for a new trial consistent with this opinion.