## SWEETEN v. SARTIN.

Court of Appeals of Kentucky.
March 27, 1953.

Joseph K. Beasley, Harlan, for appellant.
James C. Brock, Harlan, for appellee.

MOREMEN, Justice.

This appeal is from a judgment by which it was decreed that appellant, Lee Sweeten, had no right, title or interest in certain building lots in the city of Wallins and in which it was further adjudged that the absolute fee simple title to said lots was in appellee, Delia Sartin.

In 1923, appellee and J. M. Sartin were married. In the same year, they decided to purchase four lots, Nos. 70, 71, 72 and 73 in the Howard addition to the city of Wallins. Appellee testified that she furnished most of the money that paid for the lots; that "I had money saved and I sold my cow and

put everything I had in on this property and worked every day that I could get work. I worked and helped pay for everything." It was agreed that she and her husband would take title to the property jointly. The husband handled the details of purchase during which he signed a note for the small amount of indebtedness due on the purchase price. The husband, J. M. Sartin, caused the deed to the property to be executed to W. R. Sartin, as grantee, who was his 12 year old son by a previous marriage. This deed was recorded in September, 1926. He told his wife that the title to the property was in them jointly. Appellee and her husband built a home on two of these lots and, in a short time, built a house on the other two lots. Two or three years later, appellee's husband moved to West Virginia and took with him his sons and daughters by the previous marriage. He did not return to Kentucky and died not long thereafter. Appellee testified that he told her if she would pay the remaining indebtedness on the property, the property was hers. At the time Mr. Sartin departed from the state, money was still due for the lots and to mechanics and materialmen for work which had been furnished in connection with building the two houses. Appellee, a person of no special skills, managed "to make it" by taking in washing, ironing and doing work of similar character. She made payments on the indebtedness, kept the property in repair, fenced, and paid taxes and money for other improvements made during the period which has intervened since that date.

On July 8, 1946, W. R. Sartin, the stepson who was named as grantee, executed a deed to Mrs. L. Bethel Barr, his sister, for the four lots and this deed was recorded in November, 1947. On August 6, 1948, Mrs. Barr transferred two of the lots, Nos. 70 and 71, to Mrs. Elvena Scott. These were the lots upon which appellee built the second house which she rented to others. She lived in the house on lots 72 and 73.

Mrs. Scott executed a mortgage to J. T. Herrell for $450. Thereafter, J. T. Herrell brought suit to sell said lots for the purpose of using the proceeds of sale to satisfy the mortgage indebtedness.

Apparently, on April 27, 1950, a compromise between the mortgagor and the mortgagee was had and Mrs. Elvena Scott and her husband executed a deed to appellant, Lee Sweeten, and his wife for lots 70 and 71, which provided that Sweeten would assume the mortgage indebtedness. Whereupon the judgment was marked satisfied. A few days after the deed was recorded on May 2, 1950, Sweeten sent lumber and men to repair the house on lots 70 and 71. When they arrived, they were confronted with a "No Trespass" sign and Mrs. Sartin notified the men that the property belonged to her.

On May 8, 1950, appellee filed a petition in which she alleged that on the 1st day of May 1950, Lee Sweeten wrongfully entered on the lots of which she was the owner and in possession and there deposited certain quantities of building material; injured the grass, flowers and shubbery, and blocked ingress and egress from the highway fronting the property. She asked damages in the sum of $100. By counterclaim, appellant alleged that he was owner of the property, having purchased it by deed from the Scotts, and further alleged that appellee was attempting to take control of the property and was disturbing appellant in the possession of his property. He asked damages in the sum of $500. By reply, appellee pleaded ownership because of adverse possession.

Appellant contends: (1) the appellee must recover on the strength of her own title and not on defect or lack of title on the part of appellant; (2) the appellee is claiming by adverse possession and has failed to establish sufficient notice that she was claiming the land adversely; and (3) appellee's claim should be dismissed on the ground of equitable estoppel.

In Stephenson Lumber Co. v. Hurst, 259 Ky. 747, 83 S.W.2d 48, and Gatliff Coal Co. v. Lawson, Ky., 247 S.W.2d 375, we held that one may obtain a perfect title by adverse possession. Therefore, if appellee, under the facts in this case, has established ownership by adverse possession, the strength of her title is sufficient. Also, since an element of "adverse posses-

sion" necessary to create title is a requirement that the disseisor openly evince a purpose to hold dominion over it in such hostility as will give notice to the owner of the nonpossessory title of his adverse claim, a determination of whether appellee has title by adverse possession to the property here involved will answer the first two contentions made by appellant.

■■ It is shown by an abundance of evidence in this case that appellee has established ownership to the property by the nature of her dominion over it. She testified that when her husband left for West Virginia, she was informed by him that he would make no claim to the property and she could have and use it as her own. (Remember she thought the title was to her husband and to herself jointly). For many years, appellee collected rent from tenants who occupied the second house on the premises. She lived in the house, which was first constructed, during all the years that elapsed between about 1927 and April, 1950, when Lee Sweeten, who was considering buying the house from Mrs. Scott, visited the premises. She also paid the taxes which in itself is not sufficient to show an intention to hold adversely, but, to a certain extent, does strengthen her claim that she believed the property to be hers. No action of any member of her husband's family gave to her any degree of notice that they were claiming an interest to the property until the deed from W. R. Sartin to Mrs. L. Bethel Barr was recorded in November, 1947. This was constructive notice, not actual notice. She did not learn about it at that time.

Many of her neighbors testified concerning her possessory interest in the property and we have no hesitancy whatever in agreeing with the chancellor that adverse possession was amply established.

Appellant relies upon Lake v. Ford, 244 Ky. 803, 52 S.W.2d 724, and Russell v. Tipton, 193 Ky. 305, 235 S.W. 763, to support his claim that appellee failed to establish sufficient notice. Neither case may be used as precedent here. The Lake case involved the question of whether a surviving widow could hold land adversely to her children who lived with her on the land until they married or, upon reaching their majority, moved away. The court said [244 Ky. 803, 52 S.W.2d 726]:

"In the circumstances her relation was that of a life tenant, and no rule is better settled than that the possession of the life tenant cannot become adverse to the remaindermen unless he brings home to the remaindermen by clear and convincing evidence notice of his intention to set up title in himself as against the remaindermen. Russell v. Tipton, 193 Ky. 305, 235 S.W. 763."

In Russell v. Tipton, the relationship of life tenant to the remaindermen was also involved.

In the case at bar, no such relationship is presented. Even if it were, we are convinced that appellee's conduct in connection with this property was of such character that she "brought home" to every one notice that she was claiming adversely.

■ Appellant finally contends that the appellee is now estopped to assert title in herself by reason of adverse possession and is also estopped to deny the title of appellant. This contention is based upon the fact that at or about the time the property was to be sold by the order of the Harlan Circuit Court in connection with the foreclosure suit, the appellant visited the premises for the purpose of examining the property and appellee had told him that "the court was going to sell it anyway and she couldn't do a thing about it and that she had rather for me to buy it than anybody and that she might stand a show to buy it back from me." The appellee denied that she had made that statement. The proof also discloses that appellant admitted he had known of the property and of the character of Mrs. Sartin's tenure during a long period. The chancellor, in the light of disclosures in this record, evidently did not believe that Mrs. Sartin had made the statement attributed to her by Sweeten or that she had in any way misled him, so that relying upon her representation, he purchased the property—and neither do we.

Judgment affirmed.